**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
IN RE:                                                      :     Chapter 11
                                                            :
NEWLAND INTERNATIONAL                                       :     Case No. _____ (___)
PROPERTIES, CORP.,                                          :
                                                            :
            DEBTOR.                                         :
                                                            :
------------------------------------------------------------x


### PREPACKAGED PLAN OF REORGANIZATION FOR THE
### DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE


**GIBSON, DUNN & CRUTCHER LLP**
J. Eric Wise
Shira D. Weiner
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035


Proposed Attorneys for the Debtor
and Debtor in Possession


Dated:  March 29, 2013
            New York, New York

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

**I. DEFINED TERMS, RULES OF INTERPRETATION, AND
COMPUTATION OF TIME** ................................................................................... 1
1.1    Definitions ................................................................................................ 1
1.2    Rules of Construction ............................................................................. 1
1.3    Computation of Time .............................................................................. 1

**II. TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN:
ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL
COMPENSATION CLAIMS AND PRIORITY TAX CLAIMS** ............................... 2
2.1    Administrative Expense Claims ............................................................ 2
2.2    Professional Compensation Claims ...................................................... 2
2.3    Indenture Trustee Fee Claims ............................................................... 3
2.4    Priority Tax Claims ................................................................................. 3
2.5    U.S. Trustee Fees .................................................................................... 3

**III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS** ................................................................................ 3
3.1    Summary .................................................................................................. 3
3.2    Classification of Claims and Interests .................................................. 4
3.3    Treatment of Class 1: Other Priority Claims ....................................... 4
3.4    Treatment of Class 2: Other Secured Claims ...................................... 4
3.5    Treatment of Class 3: Prepetition Senior Secured Notes Claims. ...... 4
3.6    Treatment of Class 4: General Unsecured Claims ............................... 5
3.7    Treatment of Class 5: Interests ............................................................. 5
3.8    Disclaimer Governing Unimpaired Claims .......................................... 5
3.9    Controversy Concerning Impairment ................................................... 5

**IV. PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY
IMPAIRED CLASS, AND CONSEQUENCES OF NON-
CONFIRMABILITY** ............................................................................................ 6
4.1    Voting Rights ........................................................................................... 6
4.2    Acceptance Requirements ...................................................................... 6
4.3    Tabulation of the Votes .......................................................................... 6
4.4    Non-Confirmability ................................................................................. 6

**V. MEANS FOR IMPLEMENTATION OF THE PLAN AND
POSTPETITION GOVERNANCE OF REORGANIZED DEBTOR** ........................ 6
5.1    General Settlement of Claims ................................................................ 6
5.2    Sources of Consideration for Plan Distributions ................................. 6
5.3    Rule 2004 Examinations ......................................................................... 7
5.4    Continued Existence ............................................................................... 7
5.5    Re-vesting of Assets ............................................................................... 7

i

5.6     Implementation Transactions ................................................................. 7
5.7     Cancellation or Amendment of Securities and Agreements ................... 7
5.8     Reorganized Debtor ................................................................................ 9
5.9     Post Effective Date Management ............................................................ 9
5.10    Noteholder Representative ...................................................................... 9
5.11    Directors and Officers of the Reorganized Debtor ............................... 10
5.12    New Articles of Association and New Bylaws of the Reorganized
        Debtor ................................................................................................... 10
5.13    Effectuating Documents; Further Transactions .................................... 11
5.14    Entity Action ........................................................................................ 11
5.15    Section 1146 Exemption ....................................................................... 11
5.16    Preservation of Causes of Action ......................................................... 11
5.17    Non-occurrence of Effective Date ........................................................ 12

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES .......................................................................................... 12
6.1     Assumption of Contracts and Unexpired Leases ................................. 12
6.2     Cure of Defaults ................................................................................... 13
6.3     Contracts and Leases Entered into after the Petition Date .................... 13
6.4     Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ........................................................................................... 13
6.5     Reservation of Rights ........................................................................... 14
6.6     Modification, Assumption and Non-Disturbance of Certain Plan
        Critical Agreements ............................................................................. 14

VII. PROVISIONS GOVERNING DISTRIBUTIONS; PROCEDURES FOR
        TREATING AND RESOLVING DISPUTED CLAIMS ........................... 16
7.1     Distribution Record Date ...................................................................... 16
7.2     Date of Distributions ............................................................................ 17
7.3     Disbursing Agent .................................................................................. 17
7.4     Rights and Powers of Disbursing Agent ............................................... 17
7.5     Delivery of Distributions ...................................................................... 18
7.6     Withholding Taxes ................................................................................ 18
7.7     Unclaimed Property .............................................................................. 18
7.8     Disputed Claims ................................................................................... 19
7.9     Objections to Claims ............................................................................ 19
7.10    Setoffs and Recoupment ....................................................................... 19
7.11    Allocation of Plan Distributions Between Principal and Interest .......... 19
7.12    Allocation of Professional Fees ............................................................ 19
7.13    Compromises and Settlements .............................................................. 19
7.14    Reservation of Debtor's Rights ............................................................. 19
7.15    No Distributions Pending Allowance .................................................... 19
7.16    Claims Paid or Payable by Third Parties .............................................. 20
7.17    Effect of Acceptance of Distribution .................................................... 20

**VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS** .......................................................................................... **20**
  8.1    Discharge ............................................................................................ 20
  8.2    Releases .............................................................................................. 21
  8.3    No Successor Liability ........................................................................ 25
  8.4    Term of Injunctions ........................................................................... 25
  8.5    Binding Effect .................................................................................... 26
  8.6    Dissolution of the Committee ........................................................... 26
  8.7    Post-Confirmation Date Retention of Professionals .......................... 26
  8.8    Survival of Certain Indemnification Obligations ............................... 26

**IX. CONDITIONS PRECEDENT TO CONSUMMATION** ............................ **26**
  9.1    Conditions Precedent ......................................................................... 26
  9.2    Effect of Failure of Conditions Upon the Plan .................................. 28

**X. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT** ........ **29**
  10.1   Bankruptcy Court ............................................................................... 29

**XI. MISCELLANEOUS PROVISIONS** ....................................................... **31**
  11.1   Plan Supplement ................................................................................ 31
  11.2   Exemption From Registration Requirements ...................................... 31
  11.3   Statutory Fees .................................................................................... 31
  11.4   Third Party Agreements ..................................................................... 31
  11.5   Amendment or Modification of the Plan ............................................ 31
  11.6   Severability ........................................................................................ 32
  11.7   Revocation or Withdrawal of the Plan ............................................... 32
  11.8   Rules Governing Conflicts Between Documents ................................. 32
  11.9   Governing Law ................................................................................... 32
  11.10  Notices ............................................................................................... 32
  11.11  Interest and Attorneys' Fees .............................................................. 33
  11.12  Binding Effect .................................................................................... 33
  11.13  No Admissions ................................................................................... 33
  11.14  Exhibits ............................................................................................. 34

**APPENDIX A – UNIFORM GLOSSARY OF TERMS** ........................................ **- 1 -**

## INTRODUCTION

Newland International Properties, Corp., as debtor and debtor in possession (the "***Debtor***"), respectfully proposes the following Prepackaged Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding Claims against and Interests in the Debtor (the "***Plan***").

Reference is made to the Disclosure Statement with respect to the Plan, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, property, operations, and risk factors, and a summary and analysis of the Plan and certain related matters. Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor respectfully reserves the right to alter, amend, modify, revoke, or withdraw the Plan in the manner set forth herein prior to consummation of the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH THE INFORMATION THAT YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## I.
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1    Definitions.**  As used in the Plan, capitalized terms not otherwise defined herein shall have the meanings specified in Appendix A.  Unless the context otherwise requires, any capitalized term used and not defined in the Plan, but that is defined in the Bankruptcy Code, shall have the meaning assigned to that term in the Bankruptcy Code.

**1.2    Rules of Construction.**  For purposes of the Plan, unless otherwise provided herein:  (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement, whether existing or contemplated, or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) unless otherwise specified, all references in the Plan to the Introduction, Articles, Sections, and Exhibits are references to the Introduction, Articles, Sections, and Exhibits of or to the Plan, as the same may be amended, waived, or modified from time to time; (c) captions and headings to Articles and Sections are intended for convenience of reference only and are not intended to be part of or to affect interpretation of the Plan; (d) the words "herein," "hereof," "hereunder," "hereto," and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) whenever it appears appropriate from the context, each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.3    Computation of Time.**  In computing time prescribed or allowed by the Plan, unless otherwise expressly provided, Bankruptcy Rule 9006(a) shall apply.

## II.
### TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN: ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL COMPENSATION CLAIMS AND PRIORITY TAX CLAIMS

**2.1    Administrative Expense Claims.**    Other than in respect of Professional Compensation Claims (which shall be treated pursuant to Section 2.2 hereof) and Indenture Trustee Fee Claims (which shall be treated pursuant to Section 2.3 hereof), on the later of (a) the Effective Date or (b) if an Administrative Expense Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Expense Claim becomes Allowed, the Debtor will either (i) pay to each Holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim, or (ii) satisfy and discharge such Administrative Expense Claim in accordance with such other terms that the Debtor and such Holder shall have agreed upon; *provided*, *however*, that such agreed-upon treatment shall not be more favorable than the treatment provided in clause (i).    Other than with respect to Professional Compensation Claims and Cure Claims, notwithstanding anything in the Plan to the contrary, if an Administrative Expense Claim arises (x) based on liabilities incurred in, or to be paid in, the ordinary course of business during the Postpetition Period or (y) pursuant to an Executory Contract or Unexpired Lease, the Holder of such Administrative Expense Claim shall be paid in Cash by the Debtor (or after the Effective Date, by the Reorganized Debtor) pursuant to the terms and conditions of the particular transaction and/or agreement giving rise to such Administrative Expense Claim without the need or requirement for the Holder of such Administrative Expense Claim to file a motion, application, claim or request for allowance or payment of an Administrative Expense Claim with the Bankruptcy Court, including those asserted by the Steering Group in connection with the payment of all reasonable fees and expenses of its professionals as provided for and set forth in the agreement memorialized in the order approving Cash Collateral and the Plan Support Agreement.

Notwithstanding any provision contained in the Plan to the contrary, unless otherwise agreed to by the respective Plan Critical Party, the reasonable, actual out-of-pocket legal expenses for outside counsel incurred by each Plan Critical Party for any non-adversarial legal matters relating to the Concessionary Amendments and the Chapter 11 Case prior to the Effective Date shall be paid in Cash on the Effective Date by the Debtor as Administrative Expense Claims, as and to the extent set forth in a side letter entered into among the Debtor and the Plan Critical Parties.

**2.2    Professional Compensation Claims.**  Notwithstanding any other provision of the Plan dealing with Administrative Expense Claims, any Person asserting a Professional Compensation Claim shall, no later than 45 days after the Confirmation Date, file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date.  To the extent that such an application is granted by the Bankruptcy Court, the requesting Person shall receive: (a) payment of Cash in an amount equal to the amount Allowed by the Bankruptcy Court less all interim compensation paid to such Professional during the Chapter 11 Case, such payment to be made within the later of (i) the Effective Date or (ii) three Business Days after the order granting such Person's final fee application becomes a Final Order; or (b) payment on such other terms as may be mutually

agreed upon by the Holder of the Professional Compensation Claim and the Reorganized Debtor (but in no event shall the payment exceed the amount Allowed by the Bankruptcy Court less all interim compensation paid to such Professional during the Chapter 11 Case).  After the Confirmation Date, any requirement that Professionals employed by the Debtor comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor shall be authorized to employ and compensate Professionals in the ordinary course of business and without the need for Bankruptcy Court approval.  All Professional Compensation Claims for services rendered after the Confirmation Date shall be paid by the Reorganized Debtor (or the Debtor prior to the Effective Date) upon receipt of an invoice therefor, or on such other terms as the Reorganized Debtor (or the Debtor prior to the Effective Date) and the Professional may agree, without the requirement of any order of the Bankruptcy Court.

**2.3    Indenture Trustee Fee Claims.**  Notwithstanding any provision contained in this Plan to the contrary, unless otherwise agreed to by the Indenture Trustee and the Debtor, all Indenture Trustee Fee Claims incurred by the Indenture Trustee prior to the Effective Date and fees for services related to distributions pursuant to the Plan incurred other than as Disbursing Agent shall be paid in Cash on the Effective Date by the Debtor as Administrative Expense Claims, without the need for application to, or approval of, the Bankruptcy Court.  An Indenture Trustee's Charging Lien will be discharged solely upon payment in full of the Indenture Trustee Fee Claims and fees incurred for services rendered as Disbursing Agent.  Nothing herein shall be deemed to impair, waive or discharge the Charging Lien for any fees and expenses not paid by the Debtor.

**2.4    Priority Tax Claims.**  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim will be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code or, at the Debtor's election upon notice to the Holder of an Allowed Priority Tax Claim no later than five days before the Confirmation Objection Deadline, in accordance with the terms set forth in section 1129(a)(9)(A) or 1129(a)(9)(B) of the Bankruptcy Code.

**2.5    U.S. Trustee Fees.**  U.S. Trustee Fees incurred prior to the Effective Date will be paid on the Distribution Date in accordance with the applicable schedule for payment of such fees.  Until the Chapter 11 Case is closed by entry of a final decree of the Bankruptcy Court, any additional U.S. Trustee Fees will be paid by the Reorganized Debtor.

### III.
### CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**3.1    Summary.**  Pursuant to section 1122 of the Bankruptcy Code, set forth below in Section 3.2 is a designation of Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed

Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled prior to the Effective Date.

**3.2      Classification of Claims and Interests.**  The classification of Claims against and Interests in the Debtor is as follows:

**3.2.1      Class 1: Other Priority Claims.**  Other Priority Claims in Class 1 are Unimpaired, are not entitled to vote on the Plan, and are presumed to accept the Plan.

**3.2.2       Class 2: Other Secured Claims.**  Other Secured Claims in Class 2 are Unimpaired, are not entitled to vote on the Plan, and are presumed to accept the Plan.

**3.2.3      Class 3: Prepetition Senior Secured Notes Claims.**  Prepetition Senior Secured Notes Claims in Class 3 are Impaired and are entitled to vote on the Plan.

**3.2.4      Class 4: General Unsecured Claims.**  General Unsecured Claims in Class 4 are Unimpaired, are not entitled to vote on the Plan, and are presumed to accept the Plan.

**3.2.5      Class 5: Interests.**  Interests in Class 5 are Unimpaired, are not entitled to vote on the Plan, and are presumed to accept the Plan.

**3.3      Treatment of Class 1: Other Priority Claims**

**3.3.1      Impairment and Voting.**  Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Other Priority Claim in Class 1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**3.3.2      Treatment.**  On the Distribution Date, each Holder of an Allowed Other Priority Claim shall receive in full satisfaction, release, and discharge of and in exchange for such Claim: (a) payment of Cash in an amount equal to the unpaid portion of such Allowed Other Priority Claim, or (b) such other treatment that the Debtor and such Holder shall have agreed upon in writing; *provided*, *however*, that such agreed-upon treatment shall not be more favorable than the treatment provided in clause (a) of this Section 3.3.2.

**3.4      Treatment of Class 2: Other Secured Claims**

**3.4.1  Impairment and Voting.**  Class 2 is Unimpaired by the Plan.  Each Holder of an Allowed Other Secured Claim in Class 2 as of the Record Date is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**3.4.2      Treatment.**  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment or has been paid prior to the Effective Date, each Allowed Other Secured Claim in Class 2 shall be reinstated, paid in full, or otherwise rendered Unimpaired and the Reorganized Debtor shall remain liable for the Allowed Other Secured Claims.

**3.5      Treatment of Class 3: Prepetition Senior Secured Notes Claims.**

**3.5.1  Impairment and Voting.**  Class 3 is Impaired by the Plan.  Each Holder of an Allowed Prepetition Senior Secured Notes Claim in Class 3 as of the Record Date is entitled to vote such Claim to accept or reject the Plan.

**3.5.2    Treatment.**  Each Holder of an Allowed Prepetition Senior Secured Notes Claim in Class 3 shall receive New Notes in an aggregate principal amount equal to the principal amount of such Holder's Allowed Prepetition Senior Secured Notes Claim plus interest accrued and unpaid thereon through the Effective Date.  The Prepetition Senior Secured Notes Claims shall be allowed in the amount of $220 million as of the date hereof plus any accrued interest up through the Effective Date.

### 3.6  Treatment of Class 4: General Unsecured Claims

**3.6.1  Impairment and Voting.**  Class 4 is Unimpaired by the Plan.  Each Holder of an Allowed General Unsecured Claim in Class 4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**3.6.2    Treatment.**  To the extent that a Holder of an Allowed General Unsecured Claim has not been paid in full as of the Confirmation Date, unless such Holder agrees to a less favorable treatment, each Allowed General Unsecured Claim in Class 4 shall be reinstated, paid in full, or otherwise rendered Unimpaired and the Reorganized Debtor shall remain liable for the Allowed General Unsecured Claim.  Without limiting the generality of the foregoing, if an Allowed General Unsecured Claim arises (i) based on liabilities incurred in, or to be paid in, the ordinary course of business or (ii) pursuant to an Executory Contract or Unexpired Lease, the Holder of such General Unsecured Claim shall be paid in Cash by the Debtor (or, after the Effective Date, by the Reorganized Debtor) pursuant to the terms and conditions of the particular transaction and/or agreement giving rise to such Allowed General Unsecured Claim.  The Debtor reserves its rights to dispute in the Bankruptcy Court or any other court with jurisdiction the validity of any General Unsecured Claim at any time prior to the Claims Objection Bar Date.

### 3.7  Treatment of Class 5: Interests

**3.7.1    Impairment and Voting.**  Class 5 is Unimpaired by the Plan. Each Holder of an Interest in Class 5 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**3.7.2    Treatment of Interests.**  Interests in Class 5 shall be reinstated.

### 3.8  Disclaimer Governing Unimpaired Claims

Except as otherwise provided herein, nothing under the Plan will affect the Reorganized Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of the assertion of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 3.9  Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## IV.
## PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED CLASS, AND CONSEQUENCES OF NON-CONFIRMABILITY

**4.1     Voting Rights.**  Each Holder of an Allowed Claim as of the Voting Deadline that is not (a) deemed to have rejected the Plan or (b) conclusively presumed to have accepted the Plan, and that held such Claim as of the Record Date, shall be entitled to vote to accept or reject the Plan.  The instructions for completion of the Ballots are set forth in the Ballot Instructions. Approval for the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan will be sought in the Scheduling Motion.  The procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan are described in the Disclosure Statement.

**4.2     Acceptance Requirements.**  An Impaired Class of Claims shall have accepted the Plan if votes in favor of the Plan have been cast by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such Class that have voted on the Plan.

**4.3     Tabulation of the Votes.**  If the Impaired Class does not vote to accept the Plan, the Debtor reserves the right to modify the Plan.

**4.4     Non-Confirmability.**  If the Plan has not been accepted by the Class of Claims entitled to vote with respect thereto in accordance with Section 4.2 hereof, and the Debtor determines that the Plan cannot be confirmed under section 1129(b) of the Bankruptcy Code, or if the Bankruptcy Court, upon consideration, declines to approve Confirmation of the Plan, the Debtor may seek to (a) propose a new plan or plans of reorganization for the Debtor, (b) amend the current Plan incorporated therein to satisfy any and all objections, (c) withdraw the Plan or (d) convert or dismiss the Chapter 11 Case.

## V.
## MEANS FOR IMPLEMENTATION OF THE PLAN AND POSTPETITION GOVERNANCE OF REORGANIZED DEBTOR

**5.1     General Settlement of Claims**.  As discussed in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  Subject to Article VII hereof, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

**5.2     Sources of Consideration for Plan Distributions**

**5.2.1    Debtor's Available Cash.**  Cash will be available from the Debtor's operations.

**5.2.2    The New Notes.**  On the Effective Date, the Reorganized Debtor shall issue the New Notes.  Confirmation of the Plan shall be deemed approval of the New Notes (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith) and authorization and direction for the Debtor to issue the New Notes, subject to such modifications as the Reorganized Debtor, with the consent of the Steering Group (which consent shall not be unreasonably withheld), deems to be reasonably necessary to consummate such New Notes.

**5.2.3    Use of Proceeds.**  Cash available on the Effective Date shall be used by the Reorganized Debtor (a) to fund the Debtor's exit from the Chapter 11 Case, including, without limitation, the funding of (i) Allowed Administrative Expense Claims, (ii) Allowed Professional Compensation Claims, (iii) Indenture Trustee Fee Claims; (iv) Allowed Priority Tax Claims, (v) Allowed Other Priority Claims, and (vi) Distributions to be made on the Distribution Date; and (b) to fund ongoing operating expenses of the Reorganized Debtor.

**5.3    Rule 2004 Examinations.**  The power of the Debtor to conduct examinations pursuant to Bankruptcy Rule 2004 will be expressly preserved following the Effective Date.

**5.4    Continued Existence.**  Except as provided herein, the Debtor, as Reorganized Debtor, will continue to exist on or after the Effective Date as a corporate entity, with all the rights and powers applicable to such entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable law.

**5.5    Re-vesting of Assets.**  Except as expressly provided herein, the Assets of the Debtor's Estate shall re-vest with the Reorganized Debtor on the Effective Date.  The Bankruptcy Court shall retain jurisdiction to determine disputes as to property interests created or vested by the Plan.  From and after the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, except as provided herein.  As of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests, except as, and to the extent, provided in this Plan.

**5.6    Implementation Transactions.**  In connection with implementation of the Plan, the Debtor (or, after the Effective Date, the Reorganized Debtor) (a) shall effectuate the Plan through the transactions described in the Plan Supplement and (b) may engage in any other transaction in furtherance of the Plan.

**5.7    Cancellation or Amendment of Securities and Agreements.**  On the Effective Date, the Plan shall be consummated in accordance with the provisions set forth herein and, upon the effectiveness of such transactions on the Effective Date (including through execution and delivery of the New Notes and the other documents required to be executed and delivered on the Effective Date):  (a) the Prepetition Senior Secured Notes, and any other Certificate, Interest, share, note, bond, indenture, including the Indenture, except to the extent the Indenture is

7

amended and/or restated to permit the issuance of the New Notes under the Indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor (except the mortgage and such agreements, Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtor that are reinstated) shall be deemed cancelled and terminated as permitted by section 1123(a)(5)(F) of the Bankruptcy Code without further act or action under applicable agreements, law, orders, regulations or rules, and the Reorganized Debtor shall not have any continuing obligations therefor; (b) a first priority security interest in or first mortgage on the Collateral under the New Indenture and the New Notes to secure the payment of all obligations of the Debtor under the New Indenture and the New Notes shall be granted to the Indenture Trustee and Co-Trustee, as applicable, which grant to the Co-Trustee, as agent of the Indenture Trustee, shall be by way of assignment of, and any necessary conforming amendment to, the existing mortgage on the Collateral under the Indenture for the Prepetition Senior Secured Notes, such that the first priority security interest on the existing mortgage on the Collateral under the Indenture for the Prepetition Senior Secured Notes remains in place and unencumbered; and (c) the Claims against and Interests in the Debtor pursuant, relating, or pertaining to any agreements, indentures, including the Indenture, except to the extent the Indenture is amended and/or restated to permit the issuance of the New Notes under the Indenture, certificates of designation, bylaws, or certificate or articles of incorporation, formation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor (except the mortgage and such agreements, Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of or ownership interest in the Debtor that are specifically reinstated) shall be released and discharged; *provided*, *however*, that notwithstanding Confirmation or consummation, the Prepetition Senior Secured Notes, the Indenture, or, if the Indenture is amended and/or restated, the Indenture prior to such amendment and/or restatement, and any other similar agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (i) allowing such Holder to receive Distributions under and in accordance with the Plan; (ii) allowing the Disbursing Agent and the Indenture Trustee (to the extent provided in the Plan) to make distributions, if any, on account of Allowed Claims; (iii) allowing the Disbursing Agent and the Indenture Trustee to perform any necessary administrative functions with respect to the distributions (if any) to be made on account of Allowed Claims; and (iv) permitting the Indenture Trustee to (a) maintain and assert any Charging Liens and any rights for payment of Indenture Trustee fees, costs, expenses, and indemnification, (b) seek compensation and reimbursement for any reasonable and documented fees and expenses, if any, incurred in making distributions pursuant to the Plan, (c) maintain and enforce any right to indemnification under the Indenture, (d) exercise its rights and obligations relating to the interest of their holders pursuant to the Indenture, and (e) appear in these Chapter 11 cases.

If the record holder of a Prepetition Senior Secured Note is the Depository Trust Company or its nominee or another securities depository or custodian thereof, and such Prepetition Senior Secured Notes are represented by a global security held by or on behalf of the Depository Trust Company or such other securities depository or custodian, then the beneficial holder of such a Prepetition Senior Secured Note shall be deemed to have surrendered such

holder's upon surrender of such global security by the Depository Trust Company or such other securities depository or custodian thereof.

**5.8    Reorganized Debtor.**  On the Effective Date, the New Board of the Reorganized Debtor shall be appointed, and shall adopt the New Articles of Association and/or New Bylaws. The Reorganized Debtor shall be authorized to adopt any other agreements, documents, and instruments and to take any other action necessary and desirable to consummate the Plan.  The Corporate Governance Documents will be substantially in the form filed in the Plan Supplement.

**5.9    Post Effective Date Management.**  Pursuant to the provisions of the Corporate Governance Documents and the Reorganized Debtor's operative constituent documents, which may be amended from time to time in accordance with their terms and applicable law, the operation, management, and control of the Reorganized Debtor shall be the responsibility of its board of directors and senior officers (as provided under applicable law).   Entry of the Confirmation Order shall ratify and approve all actions taken by each of the Debtor from the Petition Date through and until the Effective Date.

**5.10    Noteholder Representative.**  Prior to the Effective Date, the Steering Group will appoint a representative (including any duly authorized representative or designee of such representative, the "***Noteholder Representative***") to discharge certain reporting functions, as more fully described in the Plan Supplement.  The appointment of the Noteholder Representative shall be duly recorded in the Panamanian Public Registry and the Reorganized Debtor's by-laws and, to the extent necessary (to the satisfaction of the Steering Group), other organizing documents will be amended or supplemented to recognize the Noteholder Representative and his/her rights and provide that his/her appointment and service would be governed by the Noteholders holding a majority in principal amount of the Notes ("Majority Holders").   The selection (including replacements thereof) of the Noteholder Representative shall be in each case subject to reasonable prior notice to the Reorganized Debtor; provided, that, the selection shall remain in the sole discretion of the Majority Holders (and until the Effective Date, such decision shall be made by the Steering Group).

The function of the Noteholder Representative shall be to communicate in writing to the trustee under the New Indenture defaults thereunder and to review certifications identified herein.   In this regard, the Reorganized Debtor shall covenant for all periods on or after the Effective Date that the Noteholder Representative shall have full access, subject in all cases to confidentiality provisions, to certain information and meetings, all as will be more fully described in the Plan Supplement.  The Noteholder Representative shall not be required to communicate with, or take directions from, holders of the New Notes.

The Noteholder Representative shall execute a confidentiality agreement with the Reorganized Debtor prior to appointment, which agreement shall be negotiated with the Steering Group before the Effective Date.

The Noteholder Representative function shall cease to exist following the date which is the later of eighteen (18) months following the Effective Date or three (3) months after the occurrence of an Event of Default under the Indenture, unless such Default has been earlier cured or waived.

**5.11    Directors and Officers of the Reorganized Debtor.**  On and after the Effective Date, the business and affairs of the Reorganized Debtor will be managed by the New Board and the officers, directors, managers or other responsible persons identified in the Plan Supplement. The New Board will be reconstituted to reflect that the Noteholders shall have a right to appoint a delegate to the New Board (the "***Noteholders' Board Nominee***"), which Delegate shall not have any voting rights except to the limited extent described below.  The selection (including replacements thereof) of the Noteholders' Board Nominee shall be in each case subject to reasonable prior notice to the Reorganized Debtor; provided, that, the selection shall remain in the sole discretion of the Majority Holders (and until the Effective Date, such decision shall be made by the Steering Group).  The Corporate Governance Documents shall provide that all New Board decisions shall be taken unanimously and that, in the case of a non-unanimous vote, the Nominee shall have in such instance (and only in such instance) the ability to produce the deciding vote.  Upon payment in full of the New Notes, the voting rights held by the Noteholders' Board Nominee shall be relinquished, the Noteholders' Board Nominee shall resign from the New Board, and the Noteholder Representative provisions in the Corporate Governance Documents shall be null and void.  Biographical information regarding these proposed officers, directors, managers and other responsible persons will be set forth in the Plan Supplement.  A schedule of the annual compensation to be paid to persons serving as executives, officers, directors, managers or responsible persons as of the Effective Date will be set forth in the Plan Supplement.

Pursuant to the Plan, shareholder voting agreements will be entered into by the Shareholders and a nominee of the Noteholders (the "***Noteholders' Shareholder Nominee***"), which agreements shall provide that 30% of the Shareholder voting rights (but not economic entitlements) attributable to the Debtor's capital stock shall be controlled by the Noteholders' Shareholder Nominee for the benefit of the Noteholders, such that shareholder voting at the Debtor (and otherwise affecting the Trump Ocean Club) shall be effectively allocated as follows: Upper Deck (21%), Mr. Roger Khafif (49%), and Noteholders' Shareholder Nominee (30%) (together, the "***Voting Persons***").  For the avoidance of doubt, the 30% shareholder voting rights of the Noteholders' Shareholder Nominee shall only be applicable to break a vote tie between the other Voting Persons.  "Shareholders," as used herein, shall mean:  the direct and indirect shareholders of the Company:  Ocean Point Development Corp. ("Ocean Point"); Roger Khafif; Upper Deck Properties, S.A. ("Upper Deck"); Arias, Serna & Saravia; Espacios Urbanos, S.A.

Carlos Saravia shall be appointed as CEO, President and Legal Representative of the Reorganized Debtor.  Mr. Saravia may be replaced in such roles any time after September 30, 2013, but shall be given at least thirty (30) days' notice of any such intended replacement.  A more fulsome description of the duties and power of the CEO and the terms and provisions of Mr. Saravia's appointment will be included in the Plan Supplement.

For the avoidance of doubt, the appointment of corporate officers of the Reorganized Debtor (excluding the position of CEO) shall not be subject to preapproval of the Noteholders' Board Nominee.

**5.12    New Articles of Association and New Bylaws of the Reorganized Debtor.**  The New Bylaws and New Articles of Association (as applicable), among other things, shall prohibit

the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, the Reorganized Debtor may amend and restate its New Bylaws and/or New Articles of Association (as applicable), as permitted under applicable laws, subject to the terms and conditions of such documents.

**5.13    Effectuating Documents; Further Transactions.**  On and after the Effective Date, the Reorganized Debtor and the officers and members of the New Board are authorized to and may, in the name of and on behalf of the Reorganized Debtor, issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**5.14    Entity Action.**  Upon the Effective Date, to the extent permitted by applicable law, all actions contemplated by the Plan shall be deemed ratified, authorized, and approved in all respects, including but not limited to:  (a) the selection of the directors and officers for the Reorganized Debtor;  (b) the issuance of the New Notes and related transaction security agreements and any other ancillary agreements relating to the foregoing; and (c) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the entity structure of the Debtor or the Reorganized Debtor and any entity action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including the New Notes and any and all other agreements, documents, securities, and instruments relating to any of the foregoing.  The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under any non-bankruptcy law.

**5.15    Section 1146 Exemption.**  Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any United States document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate United States state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**5.16    Preservation of Causes of Action.**  Unless expressly released or waived pursuant to Article VIII of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Plan Supplement, and the

Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against such Person as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against any Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

The Reorganized Debtor reserves and will retain the Causes of Action notwithstanding the repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Person shall vest in the Reorganized Debtor, as the case may be. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**5.17   Non-occurrence of Effective Date.**  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1   Assumption of Contracts and Unexpired Leases.**  Except as otherwise provided herein or pursuant to the Confirmation Order, all Executory Contracts and Unexpired Leases that exist between the Debtor and any Person, including the Plan Support Agreement, shall be and shall be deemed to be assumed pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption of the Executory Contracts and Unexpired Leases provided for herein. Each Executory Contract and Unexpired Lease assumed pursuant to this Section 6.1 or by any order of the Bankruptcy Court that has not been assigned to a third party prior to the Confirmation Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under section 365 of the Bankruptcy Code.

**6.2    Cure of Defaults.**  Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan, to the extent not already paid by the Debtor, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the Cure Claim, (b) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the payments required by section 365(b)(1) of the Bankruptcy Code in respect of Cure Claims shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall provide for notices of proposed assumption and proposed Cure Claims to be sent to applicable third parties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Claim must be filed and served in accordance with, and otherwise comply with, the provisions of the Scheduling Order related to assumption of Executory Contracts and Unexpired Leases.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have assented to such assumption or Cure Claim.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any such assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

**6.3    Contracts and Leases Entered into after the Petition Date.**  Contracts and leases entered into during the Postpetition Period by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**6.4    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**  Unless otherwise provided in the Plan or in the order assuming an Executory Contract or Unexpired Lease, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and restatements to any prepetition Executory Contracts or Unexpired Leases that have been executed by the Debtor during the Postpetition

Period shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**6.5    Reservation of Rights.**  Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on a list of assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or Reorganized Debtor, as applicable, shall have 30 days following entry of a Final Order to resolve and to alter its treatment of such contract or lease.

**6.6    Modification, Assumption and Non-Disturbance of Certain Plan Critical Agreements.**  The Debtor and the Debtor's principal assets are subject to certain Executory Contracts and an Unexpired Lease that the Debtor considers critical to the operations of Trump Ocean Club, the business of the Debtor and the success of the Plan, including the Trump License Agreement and other Hotel Agreements (collectively, the "***Plan Critical Agreements***"). Currently, and as of the Petition Date, the Debtor is and will be in continuing material default of its obligations under certain of the Plan Critical Agreements, including defaults in performance and payment obligations, which defaults remain to be cured or waived.  The Plan provides for the cure or waiver of such defaults (to the extent known and identified), for the assumption of each of the Plan Critical Agreements to which the Debtor is a party and for the non-disturbance of each other Plan Critical Agreement, subject to the certain Concessionary Amendments, as described in Section V.F.6 of the Disclosure Statement.  Such cures, waivers, modifications, assumptions and non-disturbance of the Plan Critical Agreements are integral to the Plan and are the basis for determining that each of the counterparties to the Plan Critical Agreements (each, a "***Plan Critical Counterparty***") is an Unimpaired Claimant and not entitled to vote on the Plan.

In pursuit of the Plan, the Debtor has negotiated the Concessionary Amendments, pursuant to which, among other things, Licensor, Manager, Hotel Manager and Hotel Asset Manager have accepted and granted material concessions for the benefit of the Debtor, Trump Ocean Club and the Plan, including substantial reductions and rescheduling of licensing and management fees, modification of certain performance obligations and the cure of certain known and identified defaults. While each of the Concessionary Amendments has been fully negotiated and executed by all parties thereto, each remains subject to certain conditions to effectiveness (as set forth in the Concessionary Amendments (the "***Concessionary Amendment Conditions***"), including, that (i) the Plan shall have become effective, by no later than July 15, 2013, subject to final documentation that is in substantial compliance with the Plan, as set forth herein and in the Disclosure Statement, and not materially adverse to the operations of the Trump Ocean Club as contemplated by the Plan Critical Agreements (as modified by the Concessionary Amendments) and to the interests of the Plan Critical Parties thereunder, (ii) the Debtor shall have assumed pursuant to the Plan each of the Plan Critical Agreements to which it is a party, and shall not otherwise disturb the other Plan Critical Agreements to which it may not be a direct party, in each case, as modified solely by the applicable Concessionary Amendments, and such assumptions shall have been approved as part of the Confirmation Order, such that, after giving effect to Plan, each of the Plan Critical Agreements shall remain in full force and effect, as in effect immediately prior to the Petition Date, subject only to the Concessionary Amendments,

(iii) the Indenture Trustee shall have entered into a non-disturbance agreement (the form of which has also been substantially negotiated), with respect to the Plan Critical Agreements, as modified solely by the Concessionary Amendment, (iv) at all times after the execution of the Concessionary Amendments, including after the Petition Date, until the satisfaction of the Concessionary Amendment Conditions, there shall be no newly discovered defaults, and no further deterioration of the level of performance, by the Debtor or its Affiliates under any of the Plan Critical Agreements, and (v) the release and discharge by the Debtor and each of its Affiliates of any Cause of Action it or they may have against any of the Plan Critical Counterparties, as set forth herein.

To effectuate the Plan, each of the Concessionary Amendments, and each of the Plan Critical Agreements to which the Debtor is a party, as modified solely by the Concessionary Amendments, shall be automatically assumed by the Debtor, and the entry of the Confirmation Order shall constitute approval of each such assumption, pursuant to section 365(a) of the Bankruptcy Code, in each case, without the requirement of any further action by the Debtor or any Plan Critical Counterparty, and without prejudice to the rights of the Debtor or any Plan Critical Counterparty, as party to an Executory Contract or Unexpired Lease, as a Claimant or otherwise in the Chapter 11 Case, including, without limitation, the right to file a Proof of Claim, to dispute a Cure Claim, to seek adequate assurance of future performance and/or to compel the assumption or rejection of a Plan Critical Agreement, in each case, based on the terms and conditions of the Plan Critical Agreements, without giving effect to the Concessionary Amendments, in the event that the Plan is not confirmed, any of the other Concessionary Amendment Conditions are not satisfied or a Bankruptcy Court order is entered or other event occurs, in the reasonable determination of a Plan Critical Counterparty, makes it unlikely that the Plan will be Confirmed or that any of the other Concessionary Amendment Conditions shall not be satisfied by July 15, 2013. Each Plan Critical Counterparty shall be entitled to exercise such right at any time prior to the satisfaction of the Concessionary Amendment Conditions, notwithstanding any time bar for the exercise of such rights set forth in the Plan or any Scheduling Order.

Without limiting the foregoing, (x) until the Plan is confirmed and, with it, the Plan Critical Agreements are assumed, as modified solely by the Concessionary Amendments, and each of the other Concessionary Amendment Conditions are satisfied, no obligation of, or default by, the Debtor or its Affiliates under any of the Plan Critical Agreements (as in effect prior to the Concessionary Amendments), and no Claim by any of the Plan Critical Counterparties in respect thereof, shall be or be deemed cure, waived, released, discharged or time barred, in any respect, and (y) upon confirmation of the Plan, including assumption of each of the Plan Critical Agreements, modified solely by the Concessionary Amendments, and the satisfaction of all other Concessionary Amendment Conditions, except as expressly set forth in such Concessionary Amendments, or in any written agreement accompanying such Concessionary Amendment that shall have been executed by the applicable Plan Critical Counterparty, no obligation of, or default by, the Debtor or its Affiliates, and no Claim by any Plan Critical Counterparty, under or with respect to such Plan Critical Agreement, shall be or be deemed cure, waived, released or discharged in any respect, and (z) with respect to any such obligation or default that has not been cured, waived, released or discharged, the applicable Plan Critical Counterparty has, and shall be deemed to have, reserved all of its Claims, rights and remedies.

None of the Plan Critical Counterparties has participated in the preparation of the Plan, the Disclosure Statement or any other Plan Document.  No Plan Critical Counterparty has, or shall be deemed to have, made any representation or warranty with respect to the Plan, the Disclosure Statement or any other Plan Document, or any statements or information contained in any of the foregoing, or that any or all of the foregoing (in whole or in part) is accurate, complete, not misleading, sufficient or appropriate for any legal or other purpose.  In agreeing to execute the Concessionary Amendments and to allow the Plan Critical Agreements to be assumed, as modified by the Concessionary Amendments, each of the Plan Critical Counterparties is relying on information provided by the Debtor and its Affiliates, including as set forth in the Plan, Disclosure Statement and other Plan Documents, and has reserved its rights with respect to any material misrepresentations or other defects in such disclosures.  No other Claimant or other person shall be entitled to assert that such agreement by a Plan Critical Counterparty constitutes an endorsement of the Plan, the Disclosure Statement or any Plan Document, or to hold any of the Plan Critical Counterparties responsible or liable for any information or omissions contained herein or therein.  For purposes of the Plan, each of the Plan Critical Counterparties, and its respective members, directors, officers, employees, representative, advisors and agents, shall be and be deemed an Exculpated Party and a Released Party.

None of the Plan Critical Counterparties participated in the preparation of the Plan, including the Liquidation Analysis, Projections or any other information contained in the Plan Documents, and no representation, warranty or endorsement with respect to the Liquidation Analysis, Projections or any other statements or information contained in the Plan, or to the Plan itself, has been made or will be made by any of the Plan Critical Counterparties, nor may any such representation, warranty or endorsement be implied by the execution of the Concessionary Amendments, the assumption of the Hotel Agreements as modified by the Concessionary Amendments, the failure of any Plan Critical Counterparty to object to the Plan or to any statement or information contained in or omitted from any of the Plan Documents, nor by any other action or inaction on the part of any the Plan Critical Counterparties.  The Debtor remains solely responsible for all statements, information and omissions contained in the Plan.

Except as otherwise disclosed in the Disclosure Statement or the Plan, or as may be required to be disclosed by the Bankruptcy Court or by law, the Debtor has agreed with certain Plan Critical Counterparties to maintain the confidentiality of the specific terms and conditions of the Hotel Agreements and Concessionary Amendments, which may be disclosed only on a need to know basis.  For that reason, copies of the Hotel Agreements and Concessionary Amendments shall be made available only to Claimants entitled to vote on the Plan and their representatives, subject to execution of a confidentiality agreement with respect to such agreements.

## VII.
## PROVISIONS GOVERNING DISTRIBUTIONS; PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

**7.1    Distribution Record Date.**  For purposes of the Plan, as of 5:00 p.m. prevailing U.S. Eastern Time on the Distribution Record Date, the records of ownership of Claims against the Debtor (including the claims register in the Chapter 11 Case) will be closed; *provided,*

*however*, the Distribution Record Date shall not apply to any distributions of securities.  For purposes of the Plan, the Debtor, the Estate, the Reorganized Debtor, and the Disbursing Agent shall have no obligation to recognize the transfer of any of the Claims against the Debtor occurring after the Distribution Record Date, and shall be entitled for all purposes relating to the Plan to recognize and deal only with those Holders of record as of the close of business on the Distribution Record Date.

**7.2    Date of Distributions.**  Distributions pursuant to the Plan shall be made on the dates otherwise set forth in the Plan or as soon as practicable thereafter.  In the event that any payment or any act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**7.3    Disbursing Agent.**  All distributions under the Plan shall be made by the Debtor as Disbursing Agent or such other entity designated as a Disbursing Agent by the Debtor on or after the Effective Date. The Indenture Trustee shall be the Disbursing Agent for the holders of Prepetition Senior Secured Notes Claims. The Debtor and the Indenture Trustee shall not be required to give any bond, surety, or any other security for the performance of their duties as Disbursing Agent unless otherwise ordered by the Bankruptcy Court.  If a Disbursing Agent is not the Debtor or the Indenture Trustee, such Person shall obtain a bond or surety for the performance of its duties, and all costs and expenses incurred to obtain the bond or surety shall be borne by the Debtor.  Furthermore, the Disbursing Agent shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any bond or surety that is obtained in connection with this Section 7.3.  The Debtor shall inform the U.S. Trustee in writing of any changes to the identity of the Disbursing Agent.

**7.4    Rights and Powers of Disbursing Agent.**

**7.4.1** *Powers of the Disbursing Agent*. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**7.4.2** *Expenses Incurred on or After the Effective Date*. Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Debtor in the ordinary course of business or in the manner and upon such other terms as may be otherwise agreed by the Debtor and the Disbursing Agent.

**7.5    Delivery of Distributions.**

**7.5.1**    Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Plan Debtors or their agents, as applicable, unless the Plan Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules.

**7.5.2**    Notwithstanding the foregoing, distributions to holders of Prepetition Senior Secured Notes Claims will be made to or through the direction of the Indenture Trustee pursuant to the terms of the Indenture.  Any distribution to the Indenture Trustee shall be deemed a distribution to the respective holder of a Prepetition Senior Secured Notes Claim under the Indenture.

**7.6    Withholding Taxes.**

**7.6.1**    The Disbursing Agent shall comply with all withholding, reporting, certification, and information requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification, and information requirements.

**7.6.2**    Persons entitled to receive Distributions hereunder shall, as a condition to receiving such Distributions, provide such information and take such steps as the Disbursing Agent may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable the Disbursing Agent to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

**7.6.3**    Any Person that does not provide the Disbursing Agent with requisite information after the Disbursing Agent has made at least three attempts (by written notice or request for such information, including on the Ballot) to obtain such information, may be deemed to have forfeited such Person's right to such Distributions, which shall be treated as unclaimed property under Section 7.7.

**7.7    Unclaimed Property.**  Any Person that fails to claim any Distribution to be distributed hereunder (including, but not limited to, by failure to comply with the Distribution Procedures applicable to the relevant Distribution) by the Forfeiture Date will forfeit all rights to any Distributions hereunder, and shall have no claim whatsoever with respect thereto against the Debtor or its Estate, the Reorganized Debtor, or any Holder of an Allowed Claim to which Distributions are made.  Upon the forfeiture of Cash, such Cash shall be the property of the Debtor or the Reorganized Debtor, as applicable; upon the forfeiture of the right to Distributions of any debt issued under the New Notes, such Distributions shall be cancelled.  Nothing herein shall require further efforts by any Person to attempt to locate or notify any other Person with respect to any forfeited property.

**7.8     Disputed Claims.**  If the Debtor, the Reorganized Debtor, or any other party in interest disputes any Claim against the Debtor, such dispute shall be (a) adjudicated in the Bankruptcy Court or in any other court having jurisdiction over such dispute, or (b) settled or compromised without any further notice to or action, order, or approval by the Bankruptcy Court, as the case may be, under applicable law.  Among other things, the Debtor (on or before the Effective Date) or the Reorganized Debtor (after the Effective Date) may elect, at its sole option, to object to or seek estimation under section 502 of the Bankruptcy Code with respect to any Proof of Claim filed by or on behalf of a Holder of a Claim against the Debtor.

**7.9     Objections to Claims.**  Unless a later or different time is set by Final Order or otherwise established by other provisions of the Plan, all objections to Claims must be filed by the Claims Objection Bar Date; *provided*, *however*, that no such objection may be filed with respect to any Claim after the Bankruptcy Court has determined by entry of a Final Order that such Claim is an Allowed Claim.  The failure by any party in interest, including the Debtor and the Committee (if appointed) to object to any Claim, whether or not unpaid, for purposes of voting shall not be deemed a waiver of such party's rights to object to, or re-examine, any such Claim in whole or in part.  After the Effective Date, no party in interest shall have the right to object to Claims against the Debtor or its Estate other than the Reorganized Debtor.

**7.10     Setoffs and Recoupment.**  The Debtor may, but shall not be required to, offset or recoup from any Claim or Interest, any Claims of any nature the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtor of any such Claim it may have against such Claimant or Interest holder.

**7.11     Allocation of Plan Distributions Between Principal and Interest.**  To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution, unless otherwise set forth explicitly in the Plan or its exhibits, shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amount.

**7.12     Allocation of Professional Fees.**  The Debtor reserves its rights to allocate as overhead any claims for professional fees and expenses approved as payable by the Debtor that are or were incurred in connection with the negotiation, consummation and effectuating the transactions set forth in the Plan.

**7.13     Compromises and Settlements.**  From and after the Effective Date, and without any further approval by the Bankruptcy Court, the Reorganized Debtor may compromise and settle all Claims and Causes of Action, without any further approval of the Bankruptcy Court.

**7.14     Reservation of Debtor's Rights.**  Prior to the Effective Date, the Debtor expressly reserves the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against it or other claims it may have against other Persons.

**7.15     No Distributions Pending Allowance.**  If a Claim or any portion of a Claim is Disputed, no payment or Distribution will be made on account of the Disputed portion of such

Claim (or the entire Claim, if the entire Claim is Disputed), unless such Disputed claim or portion thereof becomes an Allowed Claim.

**7.16    Claims Paid or Payable by Third Parties.**  The Disbursing Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent.   Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor, the Reorganized Debtor, or the Disbursing Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Disbursing Agent to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.   The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Disbursing Agent annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**7.17    Effect of Acceptance of Distribution.**  Acceptance of any Distribution or other property under the Plan will constitute the recipient's acknowledgement and agreement that all Claims, demands, liabilities, other debts against, or Interests in, the Debtor (other than those created by the Plan) have been discharged and enjoined in accordance with Article IX of the Plan.

**VIII.
SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS**

**8.1    Discharge**

**8.1.1    Discharge of Claims Against the Debtor and the Reorganized Debtor.**  Except as otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: (a) discharge the Debtor, the Reorganized Debtor or any of their Assets from all Claims, demands, liabilities, other debts and Interests that arose on or before the Effective Date, including without limitation all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of a Claim based on such debt has accepted the Plan; and (b) preclude all Persons from asserting against the Debtor, the Reorganized Debtor, or any of their Assets, any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code.   The discharge provided in this provision shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim or cancelled Interest.

**8.1.2    Injunction Related to the Discharge.**  Except as otherwise provided in the Plan or the Confirmation Order, all entities, wherever located in the world, that

have held, currently hold, or may hold Claims or other debts or liabilities against the Debtor, or any Interest in any or all of the Debtor, that are discharged pursuant to the terms of the Plan, are permanently enjoined, on and after the Effective Date, from taking, or causing any other entity to take, any of the following actions on account of any such Claims, debts, liabilities or Interests or rights:  (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, Interest, or right, other than to enforce any right to a Distribution pursuant to the Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or any of their Assets on account of any such Claim, debt, liability, Interest, or right; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, or any of their Assets on account of any such Claim, debt, liability, Interest or right; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor, the Reorganized Debtor, or any of their Assets on account of any such Claim, debt, liability, Interest, or right; (e) transferring or purporting to transfer, in whole or in part or any interest in, or asserting in any case, proceeding, or court in any jurisdiction, any Claim under the Prepetition Senior Secured Notes; and (f) commencing or continuing any action, in any manner, in any place in the world that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Such injunction shall extend to any successor of the Debtor, the Reorganized Debtor, and any of their Assets.  Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**8.2    Releases**

        **8.2.1    Releases by the Debtor.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor in its individual capacity and as Debtor in Possession will be deemed to release and forever waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtor, the Chapter 11 Case, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtor or its Estate at any time on or prior to the Effective Date against the Released Parties, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any

party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

      **8.2.2**    **Certain Waivers.** Although the Debtor does not believe that California law is applicable to the Plan, nevertheless, in an abundance of caution, the Debtor hereby understands and waives the effect of section 1542 of the California Civil Code to the extent that such section is applicable to the Debtor. Section 1542 of the California Civil Code provides:

> **§1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

**THE DEBTOR AGREES TO ASSUME THE RISK OF ANY AND ALL UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS WHICH ARE RELEASED BY THE PLAN AND THE DEBTOR HEREBY WAIVES AND RELEASES ALL RIGHTS AND BENEFITS WHICH IT MIGHT OTHERWISE HAVE UNDER THE AFOREMENTIONED SECTION 1542 OF THE CALIFORNIA CIVIL CODE WITH REGARD TO THE RELEASE OF SUCH UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS. TO THE EXTENT (IF ANY) ANY OTHER LAWS SIMILAR TO SECTION 1542 OF THE CALIFORNIA CIVIL CODE MAY BE APPLICABLE, THE DEBTOR WAIVES AND RELEASES ANY BENEFIT, RIGHT OR DEFENSE WHICH IT MIGHT OTHERWISE HAVE UNDER ANY SUCH LAW WITH REGARD TO THE RELEASE OF UNKNOWN, UNANTICIPATED OR MISUNDERSTOOD DEFENSES, CLAIMS, CAUSES OF ACTION, CONTRACTS, LIABILITIES, INDEBTEDNESS AND OBLIGATIONS.**

      **8.2.3**    **Releases by Holders of Claims and Interests.** For good and valuable consideration, the adequacy of which is hereby confirmed, and except as may be otherwise ordered by the Bankruptcy Court, on and after the Effective Date, (i) Holders of Claims that vote to accept the Plan (or are deemed to accept the Plan), and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted after the Effective Date, each Holder of a Claim that does not vote to accept the Plan, shall be deemed to have released and forever waived and discharged all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtor, the Chapter 11 Case, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the

Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiations, formulation, or preparation of the Plan, the related Disclosure Statement, the related Plan Supplement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtor or its Estate at any time up to immediately prior to the Effective Date against the Released Parties, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.   Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations (except Cure Claims that have not been filed timely) of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

8.2.4    **Releases by Opcorp and Kassir Development.**  In addition to the releases set forth in Section 8.2.3 above, through payment in full of the New Notes, after which such waivers and representations will be of no further force or effect: (i) Kassir Development shall waive its claim in the amount of $2,022,274.00 against the Debtor (and shall represent that it has no other claims against the Debtor); and (ii) Opcorp shall waive its claim in the amount of $4,787,742.45 against the Debtor (and shall represent that it has no other claims against the Debtor).

8.2.5    **CCSA Parties.**

8.2.5.1 *Releases by CCSA Parties*.  In addition to the releases set forth in Section 8.2.3 above, through payment in full of the New Notes, the CCSA Parties, on their own behalf and that of their respective Affiliates shall waive its/their rights to any management fees or expenses or reimbursements payable directly or indirectly by the Debtor until such time as the New Notes have been paid in full or otherwise discharged, and with respect to asset management fees related to the operation of the hotel or its amenities, the earlier of such time as (i) the New Notes have been paid in full or otherwise discharged and (ii) when all remaining hotel units are sold; in each case, except as disclosed on Exhibit 6 to the Term Sheet.

8.2.5.2 *Releases of CCSA Parties*.[1]  As of the Effective Date, for good and valuable consideration, which shall include the releases set forth in section 8.2.4.1 hereof and the CCSA Parties' pledging of their Interests and providing the $5 million Limited Financial Guarantee of the Debtor's obligations under the New Notes issued under the Plan, (i) each of the Debtor in its individual capacity and as Debtor in Possession, the Indenture Trustee, in its individual capacity and on behalf of the Holders, and the Holders will be deemed to release and forever waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

---

[1]  Under discussion.

unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the CCSA, the Trump Ocean Club, the Debtor, the Chapter 11 Case, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any CCSA Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtor or its Estate at any time on or prior to the Effective Date against the CCSA Parties, other than Claims or liabilities arising out of or relating to any act or omission of a CCSA Party that constitutes willful misconduct or gross negligence, and (ii) the CCSA is terminated and is of no further force and effect, and the CCSA Parties are released from any and all obligations thereunder.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release the obligations of the CCSA Parties under the Share Pledge or the $5 million Limited Financial Guarantee pursuant to the terms thereof.


8.2.6    Exculpation.    On and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action, or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Case or in connection with the preparation and filing of the Chapter 11 Case, the formulation, negotiation, solicitation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for claims, causes of action, or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan.  Without limiting the generality of the foregoing, the Exculpated Parties shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.  No provision of the Plan, the Disclosure Statement, or the Confirmation Order shall be deemed to act upon or release any claims, Causes of Action, or liabilities that the Debtor, the Estate, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of the Chapter 11 Case.


8.2.7    Injunction Related to Releases and Exculpation.    To the fullest extent allowed by law, and except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold, or may hold claims, obligations, suits,

24

judgments, damages, demands, debts, rights, Causes of Action, and liabilities that are released, waived, or exculpated pursuant to Sections 8.2.1, 8.2.2, 8.2.3, 8.2.4 and 8.2.5 hereof will be permanently enjoined, on and after the Effective Date, from taking or causing any other Person to take, any of the following actions, at any time or at any place in the world, on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities:  (a) commencing or continuing in any manner any action or other proceeding of any kind against a Released Party or Exculpated Party with respect to any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any Released Party or any Exculpated Party or any of its or their Assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, including without limitation any such actions arising from or related to the Prepetition Credit Agreements; (c) creating, perfecting, or enforcing any Lien or encumbrance against any Released Party or any Exculpated Party or any of its or their assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, including without limitation any such Lien or encumbrance arising from or related to the Prepetition Credit Agreements; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to any Released Party or any Exculpated Party or any of its or their Assets on account of any such claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities; and (e) commencing or continuing any action, in any manner, in any place in the world that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Such injunction shall extend to any successor of any Released Party or any Exculpated Party or any of its or their assets.  Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**8.3    No Successor Liability.**  Except as otherwise expressly provided herein, none of the Released Parties or the Exculpated Parties shall be determined to be successors to the Debtor or to any Person for which the Debtor may be held legally responsible, by reason of any theory of law or equity, and none can be responsible for any successor or transferee liability of any kind or character.  The Released Parties and Exculpated Parties do not agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtor or the Reorganized Debtor, whether arising before, on, or after the Confirmation Date, except as otherwise expressly provided in the Plan.

**8.4    Term of Injunctions.**  All injunctions or stays provided in, or in connection with, the Chapter 11 Case, whether pursuant to section 105, section 362, or any other provision of the Bankruptcy Code, other applicable law or court order, in effect immediately prior to Confirmation will remain in full force and effect until the Effective Date and shall remain in full force and effect thereafter if so provided in the Plan, the Confirmation Order, or by their own terms.  In addition, as described in Section 8.2 hereof, the Confirmation Order shall incorporate the release, injunction, discharge, and exculpation provisions set forth in the Plan, which shall be in effect after the Effective Date and, on and after Confirmation Date, the Debtor may seek

further orders to preserve the status quo during the time between the Confirmation Date and the Effective Date or to enforce the provisions of the Plan.

      **8.5**    **Binding Effect.**  The Plan will be binding upon, and inure to the benefit of, the Debtor and all Holders of Claims and Interests, and their respective successors and assigns, whether or not the Claims and Interests of such Holders are Impaired under the Plan and whether or not such Holders have accepted the Plan.

      **8.6**    **Dissolution of the Committee.**  The Committee, if appointed, shall be dissolved on the Effective Date and shall not continue to exist thereafter except for the limited purposes of filing any remaining fee applications, and the Professionals retained by the Committee shall be entitled to compensation for services performed and reimbursement of expenses incurred in connection therewith.  Upon dissolution of the Committee, the members of the Committee shall be released and discharged of and from all duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Case.

      **8.7**    **Post-Confirmation Date Retention of Professionals.**  After the Confirmation Date, any requirement that Professionals employed by the Debtor comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor shall be authorized to employ and compensate Professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

      **8.8**    **Survival of Certain Indemnification Obligations.**  Subject to Section 5.6 hereof, the obligations of the Debtor, pursuant to the Debtor's operating agreements, certificates of incorporation or formation, articles of association, by-laws, memoranda of association, or equivalent corporate governance documents, applicable statutes, or employment agreements, to indemnify individuals who prior to the Effective Date served as its directors, officers, managers, agents, employees, representatives, and Professionals, in respect of all present and future actions, suits, and proceedings against any of such officers, directors, managers, agents, employees, representatives, and Professionals, based upon any act or omission related to service with, for, or on behalf of the Debtor on or before the Effective Date, as such obligations were in effect at the time of any such act or omission, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Reorganized Debtor regardless of such confirmation, consummation, and reorganization.

**IX.**
**CONDITIONS PRECEDENT TO CONSUMMATION**

      **9.1**    **Conditions Precedent.**  The Plan shall not become effective unless and until the following conditions have been satisfied or waived.  The Debtor anticipates that all of such conditions to Confirmation and to the Effective Date will be satisfied or waived, and intends to present evidence at the Confirmation Hearing demonstrating such satisfaction or waiver. Notwithstanding the foregoing, there is a risk that some or all of the conditions to Confirmation or the Effective Date will not be satisfied or waived.

### 9.1.1        Conditions to Confirmation

9.1.1.1  *Plan Supplement.*   All documents to be provided in the Plan Supplement are in a form that is reasonably acceptable in all material respects to the Debtor and the Steering Group.

9.1.1.2  *Confirmation Order.*   The Confirmation Order must be entered by the Bankruptcy Court in a form reasonably acceptable in all material respects to the Debtor and the Steering Group.

### 9.1.2        Conditions to Effective Date

9.1.2.1  *Confirmation Order.*   The Bankruptcy Court shall have entered the Confirmation Order in a form reasonably acceptable in all material respects to the Debtor and the Steering Group.

9.1.2.2  *No Stay of Confirmation.*   There shall not be in force any order, decree, or ruling of any court or governmental body having jurisdiction, restraining, enjoining, or staying the consummation of, or rendering illegal the transactions contemplated by, the Plan.

9.1.2.3  *Receipt of Required Authorization.*   All authorizations, consents, and regulatory approvals (if any) necessary to effectuate the Plan shall have been obtained.

9.1.2.4  *New Notes.*   The documents evidencing the New Notes shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived.

9.1.2.5  *Delivery of Share Pledge and the Limited Financial Guarantees.* The documents evidencing the Share Pledge and $5 million Limited Financial Guarantee shall have been executed and delivered by the respective parties thereto, and all conditions precedent to the effectiveness of each such document shall have been satisfied or waived.

9.1.2.6  *Organizational Documents.*   The New Articles of Association, New Bylaws and New Shareholder Agreement shall each be in form and substance reasonably acceptable to the Debtor and the Steering Group.

9.1.2.7  *Implementation Transactions.*   The transactions that are required to be completed on or before the Effective Date have been completed in a manner reasonably acceptable in all material respects to the Debtor and the Steering Group, including the CCSA Parties' (1) waiver, on their own behalf and that of their respective affiliates, their rights to any management fees or expenses or reimbursements payable directly or indirectly by the Company until such time as the New Notes have been paid in full or otherwise defeased pursuant to the terms of the New Notes, and (2) representations and warranties as set forth in the letter agreement by and among the CCSA Parties, dated as of the Effective Date.  Notwithstanding the foregoing conditions, no party that willfully causes the failure to satisfy a condition should be entitled to object to the consummation of the Plan on the grounds that such condition is not satisfied.

9.1.2.8 *Assumption.* The Bankruptcy Court shall have entered an order approving the assumption of the Plan Support Agreement.

9.1.2.9 *Payment of Fees.* The Debtor shall have paid all reasonable professional fees and expenses of the Steering Group as agreed under the Plan Support Agreement.

9.1.2.10 *Kassir Development's Waiver.* Kassir Development's wavier of its claim in the amount of $2,022,274.00 against the Debtor (and shall represent that it has no other claims against the Debtor).

9.1.2.11 *Opcorp's Waiver.* Opcorp shall waive its claim in the amount of $4,787,742.45 against the Debtor (and shall represent that it has no other claims against the Debtor).

9.1.2.12 *CCSA Parties' Waiver.* The CCSA Parties, on their own behalf and that of their respective Affiliates shall waive its/their rights to any management fees or expenses or reimbursements payable directly or indirectly by the Debtor until such time as the New Notes have been paid for in full or otherwise discharged, and with respect to asset management fees related to the operation of the hotel or its amenities, the earlier of such time as (i) the New Notes have been paid in full or otherwise discharged and (ii) when all remaining hotel units are sold; in each case, except as disclosed on Exhibit 6 to the Term Sheet.

**9.1.3    Trump Concessionary Amendments.** Upon satisfaction of the conditions in Section 9.1.2 hereof, the condition to effectiveness of the Concessionary Amendments, requiring that the Plan be effective, will be deemed satisfied and the Concessionary Amendments, accordingly, will be concurrently deemed effective.

**9.1.4    Waiver.** Any of the conditions set forth in Sections 9.1.1 and 9.1.2 hereof may be waived by the Debtor, with the consent of the Steering Group, which consent shall not be unreasonably withheld.

**9.2    Effect of Failure of Conditions Upon the Plan.** In the event that the conditions specified in Section 9.1 have not been satisfied or waived in accordance with Section 9.1.3 hereof on or before 120 days after the Confirmation Date, then, the Debtor may seek an order from the Bankruptcy Court vacating the Confirmation Order. Such request shall be served upon counsel for the Steering Group, the Committee (if appointed), and the U.S. Trustee. If the Confirmation Order is vacated, (a) the Plan shall be null and void in all respects, (b) any settlement of Claims or Interests provided for hereby shall be null and void without further order of the Bankruptcy Court, and (c) the time within which the Debtor may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of 60 days after the date the Confirmation Order is vacated.

## X.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

**10.1    Bankruptcy Court.**    Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

**11.1.1.**    allow, disallow, determine, liquidate, classify, estimate, or establish the priority or Secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

**11.1.2.**    hear and rule upon all Causes of Action retained by the Debtor and commenced and/or pursued by the Debtor or the Reorganized Debtor;

**11.1.3.**    resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, and (c) any dispute regarding whether a contract or lease is or was executory or expired;

**11.1.4.**    ensure that Distributions on account of Allowed Claims are accomplished pursuant to the provisions of the Plan;

**11.1.5.**    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

**11.1.6.**    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

**11.1.7.**    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

**11.1.8.**    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

**11.1.9.**    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the

Plan, or any Person's rights arising from or obligations incurred in connection with the Plan or such documents;

11.1.10.    approve any modification of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

11.1.11.    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 363, 503(b), 1103, and 1129(a)(9) of the Bankruptcy Code, which shall be payable by the Debtor, or the Reorganized Debtor, as applicable, only upon allowance thereof pursuant to the order of the Bankruptcy Court; *provided*, *however*, that the fees and expenses of the Debtor incurred after the Confirmation Date, including attorneys' fees, may be paid by the Reorganized Debtor in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

11.1.12.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation of the Plan, implementation, or enforcement of the Plan or the Confirmation Order;

11.1.13.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

11.1.14.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or if Distributions pursuant to the Plan are enjoined or stayed;

11.1.15.    determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement, or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

11.1.16.    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

11.1.17.    hear and determine all matters related to (a) the property of the Debtor and the Estate from and after the Confirmation Date and (b) all disputes regarding the existence, nature or scope of the Debtor's discharge;

11.1.18.    enter an order or final decree concluding or closing the Chapter 11 Case; and

     **11.1.19.**  hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

For the avoidance of doubt, the Bankruptcy Court will not be retaining jurisdiction to interpret and enforce the provisions of the New Notes.

# XI.
## MISCELLANEOUS PROVISIONS

     **11.1**    **Plan Supplement.**  No later than ten (10) days prior to the Confirmation Hearing, the Debtor shall File with the Bankruptcy Court the Plan Supplement, which shall contain the documents identified herein and such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Balloting and Tabulation Agent.

     **11.2**    **Exemption From Registration Requirements.**  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and Distribution of any securities contemplated by the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.  In addition, any securities contemplated by the Plan will be tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code; and (ii) the restrictions, if any, on the transferability of such securities and instruments.

     **11.3**    **Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

     **11.4**    **Third Party Agreements.**  The Distributions to the various Classes of Claims and Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan.  Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.

     **11.5**    **Amendment or Modification of the Plan.**  As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor, with the consent of the Steering Group (which consent shall not be unreasonably withheld), at any time before Confirmation, provided, that the Plan, as modified, shall meet the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Debtor may modify the Plan at any time after Confirmation and before consummation of the Plan, *provided*, *however*, that the Plan, as modified, shall meet the requirements of sections 1122 and 1123 of the Bankruptcy Code, the Debtor shall have complied with section 1125 of the Bankruptcy Code, the Bankruptcy Court, after notice and a hearing, shall have confirmed the Plan as modified, under section 1129 of the

Bankruptcy Code, and the circumstances warrant such modifications. Except as specifically provided herein, a Holder of a Claim that has accepted the Plan prior to modification shall be deemed to have accepted such Plan as modified, *provided*, *however*, that the Plan, as modified, does not materially and adversely change the treatment of the Claim or Interest of such Holder.

**11.6    Severability.** In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void, or unenforceable, the Debtor may, at its option, and with the consent of the Steering Group, such consent not to be unreasonably withheld, (a) treat such provision as invalid, void, or unenforceable with respect to the Holder or Holders of such Claims or Interests that the provision is determined to be invalid, void, or unenforceable, in which case such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**11.7    Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing at any time prior to the occurrence of the Effective Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

For the avoidance of doubt, if the Confirmation Hearing is adjourned, the Debtor reserves the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at such times and in such manner as it considers appropriate, subject to the provisions of the Bankruptcy Code.

**11.8    Rules Governing Conflicts Between Documents.** In the event of a conflict between the terms or provisions of the Plan and any Plan Documents other than the Plan, the terms of the Plan shall control over such Plan Documents. In the event of a conflict between the terms of the Plan or the Plan Documents, on the one hand, and the terms of the Confirmation Order, on the other hand, the terms of the Confirmation Order shall control. In the event of a conflict between the information contained in this Disclosure Statement and the Plan or any other Plan Document, the Plan or other Plan Document (as the case may be) will control.

**11.9    Governing Law.** Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its conflicts of law principles.

**11.10    Notices.** Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, charges prepaid. If to the Debtor, any such notice shall be directed to the following at the addresses set forth below:

Newland International Properties, Corp.
Trump Ocean Club
Avenida Calle 82 # 10-33 Oficina 1001
Bogota, Columbia
Attention:    Carlos Saravia
              Chief Operating Officer

-- with copies to –

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193
Attention:    Kevin W. Kelley, Esq.
              J. Eric Wise, Esq.
              Shira D. Weiner, Esq.

-and-

Adames, Duran, Alfaro & Lopez
Calle 50, Torre Global Bank
Piso 24, Oficina 2406
Panama, Republic of Panama
Attention:    Nadiuska López de Abood
              Beatriz L. Romero Alfaro

**11.11  Interest and Attorneys' Fees.**  Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**11.12  Binding Effect.**  The Plan shall be binding upon the Debtor, the Reorganized Debtor, the Holders of all Claims and Interests, parties in interest, Persons, and Governmental Units and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**11.13  No Admissions.**  As to contested matters, adversary proceedings, and other Causes of Action or threatened Causes of Action, nothing in the Plan, the Plan Supplement, the Disclosure Statement, or other Plan Documents shall constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.  The Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of the Plan as to Holders of Claims against, or Interests in, the Debtor, as Debtor and Debtor in possession in the Chapter 11 Case.

33

**11.14   Exhibits.**  All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

The undersigned have executed this Plan of Reorganization as of the 29 day of March, 2013.

Dated: March 29, 2013

Respectfully submitted,

**NEWLAND INTERNATIONAL PROPERTIES, CORP.**

By: _____

Name: Eduardo Saravia
Title: Secretary and Director

## **APPENDIX A – UNIFORM GLOSSARY OF TERMS**

Unless the context otherwise requires, the following terms, when used in initially capitalized form in the Disclosure Statement, related exhibits, and Plan Documents, shall have the following meanings.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in capitalized form that is not defined herein but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term by the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the event of a conflict or ambiguity).  Certain defined terms used in only one Section of the Disclosure Statement are defined in such Section.  The rules of construction set forth herein and in section 102 of the Bankruptcy Code shall apply.  All references to the "***Plan***" shall be construed, where applicable, to include references to the Plan and all its exhibits, appendices, schedules, and annexes (and any amendments made in accordance with their terms or applicable law).

1.    ***Administrative Expense*** means any cost or expense of administration of the Chapter 11 Case incurred before the Effective Date and allowable under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code including:  (a) any actual and necessary postpetition cost or expense of preserving the Estate or operating the business of the Debtor; (b) any payment required to cure a default on an assumed Executory Contract or Unexpired Lease; (c) any postpetition cost, indebtedness, or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business; (d) any cost or expense in respect of a Professional Compensation Claim; and (e) any cost or expense in respect of the Indenture Trustee Fee Claims.

2.    ***Administrative Expense Claim*** means any Claim for the payment of an Administrative Expense.

3.    ***Affiliate*** means An "Affiliate" and "Affiliates" of any person or entity shall be all direct and indirect subsidiaries, parents, or affiliates (which term "affiliate" shall mean any entity or person controlling, controlled by, under common control with such person or entity) of such person or entity.  When the term Affiliate or Affiliates is used herein, such term shall refer to the Affiliate or Affiliates of the Company, except where expressly stated that such term refers instead to one or more of the Company, Shareholders or CCSA Parties.

4.    ***Allowed*** means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is scheduled by the Debtor on its Schedules (to the extent the Debtor files Schedules in the Chapter 11 Case) as neither disputed, contingent, nor unliquidated, and as to which the Debtor or other party in interest have not Filed an objection by the Claims Objection Bar Date; (b) a Claim that either is not a Disputed Claim or has been Allowed by a Final Order; (c) a Claim that is Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; or (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

5.      *Allowed Amount* of any Claim or Interest means the amount at which that Claim or Interest is Allowed.

6.      *Allowed Claim; Allowed Interest* means any Claim or Interest in the Debtor or its Estate as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise seek recovery from the Holder of the Claim or Interest, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.

7.      *Assets* means all property wherever located in which the Debtor holds a legal or equitable interest, including all property described in section 541 of the Bankruptcy Code and all property disclosed in the Debtor's Schedules (to the extent the Debtor files Schedules in the Chapter 11 Case) and the Disclosure Statement.

8.      *Ballot* means the ballot form for voting to accept or reject the Plan distributed to all Holders of Impaired Claims entitled to vote on the Plan.

9.      *Ballot Instructions* means the instructions for completion of a Ballot; the Ballot Instructions applicable to a Ballot shall be distributed to a Holder concurrently with the Ballot.

10.     *Balloting and Tabulation Agent* means Epiq Bankruptcy Solutions, LLC, which has been retained by the Debtor (subject to the approval of the Bankruptcy Court).

11.     *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made, to the extent applicable to the Chapter 11 Case.

12.     *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over the Chapter 11 Case.

13.     *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules and general orders of the Bankruptcy Court, as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made, to the extent applicable to the Chapter 11 Case.

14.     *Business Day* means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

15.     *Cash* means the legal tender of the United States of America (USD), unless Panama (PAB) or the Euro (EUR) is specified.

16.     *Causes of Action* means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, in each case held by the Debtor, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter

arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

17.     *CCSA* means that certain Construction Completion Support Agreement, dated as of November 6, 2007, among Mr. Roger Khafif, Mr. Carlos A. Serna and Mr. Eduardo Saravia, and HSBC, in its capacity as Indenture Trustee under the Indenture.

18.     *CCSA Parties* means Mr. Roger Khafif, Mr. Eduardo Saravia, and Mr. Carlos A. Serna.

19.     *Certificate* means any instrument evidencing a Claim or an Interest.

20.     *Chapter 11 Case* means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

21.     *Charging Lien* means any right of the Indenture Trustee to a Lien upon, or other priority with respect to, distributions to be made to holders of Prepetition Senior Secured Notes Claims for payment of any Indenture Trustee Fee Claims and Indenture Trustee Indemnification.

22.     *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code against the Debtor or the Estate, whether or not asserted.

23.     *Claimant* means the Holder of a Claim.

24.     *Claims Objection Bar Date* means, with respect to any Claim, the 120th day following the latest of the Effective Date, the date such Claim is Filed, and such later date as may be established from time to time by the Bankruptcy Court as the last date for filing objections to such Claims.

25.     *Class* means a category of Holders of Claims or Interests, as set forth in Articles III and IV of the Plan, pursuant to section 1122 of the Bankruptcy Code.

26.     *Collateral* means any property or interest in property of the Estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

27.     *Committee* means the official committee of unsecured creditors for the Debtor, if any, appointed by the U.S. Trustee.

28.     *Concessionary Amendments* means certain amendments to the Hotel Agreements that have been executed by the parties thereto, to become effective only upon the Confirmation of the Plan and the satisfaction of certain additional conditions, as set forth therein, including the assumption by Debtor of each of the Hotel Agreement to which it is a party as modified solely by such Concessionary Amendments, and non-disturbance of all other Hotel Agreements to which Debtor is not a direct party as modified solely by the Concessionary Amendments, such that, after giving effect to the Plan, all Hotel Agreements shall remain in full force and effect, as modified solely by the Concessionary Amendments.

29.     ***Confirmation, Confirmation of the Plan, or Plan Confirmation*** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

30.     ***Confirmation Date*** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

31.     ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

32.     ***Confirmation Objection Deadline*** means the last day set by the Bankruptcy Court for the filing of objections to Confirmation of the Plan.

33.     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 and other applicable sections of the Bankruptcy Code, approving the Disclosure Statement, and approving the Debtor's solicitation procedures.

34.     ***Consenting Parties*** means those Holders of Claims who are parties to the Plan Support Agreement.

35.     ***Corporate Governance Documents*** means the documents evidencing the corporate governance and equity structure applicable to the Reorganized Debtor, which documents will implement the provisions of the Term Sheet and will be substantially in the forms filed in the Plan Supplement.

36.     ***Co-Trustee*** means, as of the date of the Disclosure Statement, HSBC Investment Corporation (Panama) S.A.  On the Effective Date, Co-Trustee shall mean either HSBC Investment Corporation (Panama) S.A., if no successor co-trustee has been appointed on or prior to the Effective Date, or any such successor co-trustee appointed by the Reorganized Debtor as successor co-trustee under the Co-Trustee Agreement to HSBC Investment Corporation (Panama) S.A.

37.     ***Co-Trustee Agreement*** means Amended and Restated Agreement of Appointment and Acceptance of Co-Trustee, dated the Effective Date, among Newland, HSBC Bank USA, N.A., any successor trustee to HSBC Bank USA, N.A. appointed on or prior to the Effective Date, HSBC Investment Corporation (Panama) S.A., and any successor co-trustee to HSBC Investment Corporation (Panama) S.A. appointed on or prior to the Effective Date.

38.     ***Creditor*** means any Person holding a Claim against the Debtor's Estate or against property of the Debtor that arose or is deemed to have arisen on or prior to the Petition Date.

39.     ***Cure Claim*** means a Claim based upon the Debtors' defaults under an Executory Contract or Unexpired Lease existing as of the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

40.     ***Debtor*** means Newland International Properties, Corp.

41.     ***Disbursing Agent*** means the Debtor, the Reorganized Debtor or such other Person or Persons identified in the Plan Supplement as the disbursing agent for the Distributions required under the Plan in its capacity as a disbursing agent under the Plan.

42.     ***Disclosure Statement*** means that certain "Disclosure Statement" Filed in support of the Plan for the Debtor, dated March 29, 2013, including all exhibits attached thereto or referenced therein, pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court in the Confirmation Order, as such Disclosure Statement may be further amended, supplemented, or modified from time to time with the further approval of the Bankruptcy Court.

43.     ***Disputed*** means, with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (a) as to which no request for payment or Proof of Claim has been timely filed, that is listed in the Schedules (to the extent the Debtor files Schedules in the Chapter 11 Case) as unliquidated, contingent, or disputed; (b) as to which a request for payment or Proof of Claim has been timely filed, but as to which an objection or request for estimation has been filed by the applicable Claims Objection Bar Date, or which is otherwise disputed in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; (c) as to which a request for payment or Proof of Claim was required to be timely filed, but as to which a request for payment or Proof of Claim was not timely or properly filed; (d) that is disputed in accordance with the provisions of the Plan; or (e) if not otherwise Allowed, as to which the applicable Claims Objection Bar Date has not expired.

44.     ***Distribution*** means any distribution by the Disbursing Agent to the Holders of Allowed Claims pursuant to Article VIII of the Plan.

45.     ***Distribution Date*** means the date that shall take place as soon as practicable after the later of: (a) the Effective Date; (b) the date a Claim becomes payable pursuant to any agreement with the Disbursing Agent; or (c) for any other Claim that is not an Allowed Claim on the Effective Date, expressly including any Allowed General Unsecured Claim which becomes due and payable after the Effective Date, on or as soon as reasonably practicable after the date on which such Claim becomes an Allowed Claim, but no later than 30 days after the date upon which the Claim becomes an Allowed Claim.

46.     ***Distribution Record Date*** means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be five Business Days before the Confirmation Date, which record date shall not apply to publicly held securities.

47.     ***Effective Date*** means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect and shall be substantially consummated, which date shall be after the later of (a) the date on which the Confirmation Order shall have been entered and is no longer subject to any stay; and (b) the date on which the conditions to the Effective Date provided for in Section 9.1.2 of the Plan have been satisfied or waived.

48.     *Equity Security* means (a) shares of common stock, preferred stock, other forms of ownership interest, or any interest or right to convert into such an equity or ownership interest or to acquire any equity or ownership interest or any interest or right for which the amount owing is determined by reference to an equity or ownership interest, in the Debtor that was in existence immediately prior to or on the Petition Date for such Debtor, and (b) Allowed Claims against the Reorganized Debtor arising out of, relating to, or in connection with any of the foregoing that are subject to section 510(b) of the Bankruptcy Code.

49.     *Estate(s)* means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

50.     *Exculpated Parties* means (a) the Debtor, (b) the Committee and its members, (c) the Indenture Trustee, (d) the Co-Trustee, (e) the Steering Group and its members, (f) the Plan Critical Counterparties, and the officers, directors, employees, professionals, Professionals and agents of the Persons listed in subsections (a) through (f) of this definition, along with the successors and assigns of each of the foregoing.

51.     *Executory Contract* means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

52.     *Federal Judgment Rate* means the federal judgment interest rate which was in effect as of the Petition Date.

53.     *File or Filed* means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

54.     *Final Order* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, reargument, or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, reargument, or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

55.     *Financial Guarantee* means the limited guarantee in the amount of $5.0 million, which will be payable to the trustee under the New Indenture for the benefit of holders of the New Notes in the event that the New Notes are not paid in full (resulting either from a payment default or a shortfall at final maturity), which shall be made in settlement of any obligations of the Shareholders under the CCSA and shall be included in the Plan Supplement.

56.     *Forfeiture Date* means the date that is the one year anniversary of the Effective Date.

57.     *General Unsecured Claim* means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.  A General Unsecured Claim shall be Allowed, to the extent such Claim is reflected in the books and records of the Debtor, in the amount reflected in such books and records, subject to the right of the Claimant to

object to such amount in accordance with normal and customary practice; a General Unsecured Claim that is not reflected in the books and records of the Debtor shall be Allowed, except to the extent Disputed by the Debtor pursuant to the dispute resolution procedures in the Plan.

58.    *Governmental Unit* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

59.    *Holder* means any Person holding an Interest or Claim.

60.    *Hotel Agreements* means the Trump License Agreement, the Hotel Management Agreement, the PH Administration Agreement and certain other related agreements, collectively defined as "*Hotel Agreements*" in the Concessionary Amendments and listed as such on schedules to the Concessionary Amendments.

61.    *Hotel Management Agreement* means the Amended and Restated Hotel Management Agreement, dated as of April 13, 3011, as amended, among Trump Panama Hotel management, LLC ("*Hotel Operator*") the Company, Hotel TOC, Inc. ("*Hotel Owner*") and "*Owners Meeting*", as defined therein, consisting of the owners of units in Trump Ocean Club Owner and Owners Meeting.

62.    *HSBC* means HSBC Bank USA, N.A.

63.    *Impaired* means a Claim or a Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

64.    *Indenture Trustee* means HSBC, in its capacity as trustee under the Indenture (or any successor).

65.    *Indenture* means that certain Indenture, dated as of November 6, 2007, as amended from time to time, between the Company and HSBC, pursuant to which the Prepetition Senior Secured Notes were issued.

66.    *Indenture Trustee Fee Claim* means the accrued and unpaid fees, costs, and expenses of the Indenture Trustee (including of any predecessor indenture trustee) and the Co-Trustee, including the fees, costs, and expenses of the Indenture Trustee's (and any predecessor indenture trustee's) and the Co-Trustee's attorneys payable pursuant to the Indenture.

67.    *Interests* means any: (a) Equity Security of the Debtor, including all shares or similar securities in the Debtor, whether or not transferable or denominated "stock", and whether issued, unissued, authorized, or outstanding; (b) any warrants, options, or contractual rights to purchase, sell, subscribe or acquire such Equity Security at any time and all rights arising with respect thereto; and (c) any similar interest in the Debtor.

68.    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

69.    *Liquidation Analysis* means the liquidation analysis attached as Exhibit D to the Disclosure Statement.

70.    ***New Articles of Association*** means any corporate governance documents equivalent to U.S. articles of association, which documents shall be substantially in the forms filed in the Plan Supplement.

71.    ***New Board*** means the initial board of directors (or its equivalent under applicable law) of the Reorganized Debtor.

72.    ***New Bylaws*** means any corporate governance documents equivalent to U.S. bylaws, which documents shall be substantially in the forms filed in the Plan Supplement.

73.    ***New Indenture*** means that certain amended and restated Indenture, dated as of the Effective Date, between Newland International Properties Corp. and CSC Trust Company of Delaware as Trustee, that will be entered into in connection with the Plan, pursuant to which the New Notes will be issued on the Effective Date.

74.    ***New Notes*** means the first lien secured notes to be issued in connection with the Plan to holders of Prepetition Senior Secured Notes Claims, as more fully described in section III.B. of the Disclosure Statement.

75.    ***Noteholder*** means a Holder of Prepetition Senior Secured Notes.

76.    ***Ocean Point*** means Ocean Point Development Corp., a Shareholder.

77.    ***Other Priority Claim*** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

78.    ***Other Secured Claim*** means any Secured Claim that is not a Claim under the Prepetition Senior Secured Notes.

79.    ***Person*** means any person, including without limitation, any individual, entity, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, estate, trust, unincorporated association or organization, official committee, ad hoc committee or group, governmental agency or political subdivision thereof, the U.S. Trustee, and any successors or assigns of any of the foregoing.

80.    ***Petition Date*** means the date on which the Chapter 11 Case was commenced with the filing of voluntary petition for relief under chapter 11 of the Bankruptcy Code.

81.    ***PH Administration Agreement*** means the P.H. TOC Management Agreement, dated April 13, 2011, as amended, between Trump Panama Condominium Management, LLC ("***Condominium Manager***" and, together with Licensor and Hotel Operator, the "***Trump Parties***") and Owners Meeting, Condominium Manager.

82.    ***Plan*** means the Prepackaged Plan of Reorganization for the Debtor under Chapter 11 of the Bankruptcy Code proposed by the Debtor, dated March 29, 2013, and all annexes and exhibits attached thereto or referenced therein including, without limitation, the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

83.     ***Plan Critical Counterparty*** means each of the counterparties to the Plan Critical Agreements (as defined in Section 6.6 of the Plan).

84.     ***Plan Documents*** means the Plan, the Plan Supplement, the Disclosure Statement, and all documents, attachments, annexes, and exhibits attached to the Plan or the Disclosure Statement that aid in effectuating the Plan, as the same may be amended, modified, or supplemented, in accordance with their terms.the counterparties to the Plan Critical Agreements .

85.     ***Plan Solicitation Agent*** means ACGM Inc., which has been retained by the Debtor for the pre-petition solicitation of votes on the Plan.

86.     ***Plan Supplement*** means the supplement to the Plan to be filed by the Debtor with the Bankruptcy Court not later than ten (10) days prior to the Confirmation Hearing, which supplement shall contain forms of substantially final documents required for the implementation of the Plan.

87.     ***Plan Support Agreement*** means that certain Plan Support Agreement, dated January 23, 2013, by and among the Debtor and the Consenting Parties, attached as Exhibit E to the Disclosure Statement.

88.     ***Postpetition Period*** means the period of time following the Petition Date through the Confirmation Date.

89.     ***Prepetition Senior Secured Notes*** means the 9.5% Senior Secured Notes due 2014 in aggregate principal amount of $220,000,000 issued under the Indenture.

90.     ***Priority Tax Claim*** means a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code.

91.     ***Pro Rata Share*** means, with reference to any Distribution on account of any Allowed Claim or Allowed Interest in Class 3, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such claim bears to the aggregate amount of all Allowed Claims or Allowed Interests in the Class.

92.     ***Professional Compensation Claim*** means each Administrative Expense Claim for compensation, indemnification, or reimbursement of expenses incurred by Professionals through the Confirmation Date pursuant to section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

93.     ***Professionals*** means those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code, for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(1) of the Bankruptcy Code and/or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court or is sought pursuant to section 503(b)(4) of the Bankruptcy Code.

94.    ***Proof of Claim*** means any proof of claim filed with the Bankruptcy Court or the Balloting and Tabulation Agent with respect to the Debtor pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002.

95.    ***Record Date*** means March 20, 2013.

96.    ***Released Parties*** means (a) the Debtor, (b) the Committee and its members, if any, (c) the Indenture Trustee, (d) the Co-Trustee, (e) the Steering Group and its members, (f) Holders of Impaired Class 3 Claims that voted to accept the Plan, (g) the Plan Critical Counterparties, and the respective officers, directors, employees, professionals, Professionals and agents of the Persons identified in subsections (a) through (g) of this definition, along with the successors and assigns of each of the foregoing.

97.    ***Reorganized Debtor*** means the Debtor and its successors on or after the Effective Date.

98.    ***Restructuring*** means the restructuring of the Debtor's capital structure implemented by the Plan and the transactions contemplated in connection therewith.

99.    ***Restructuring Transactions*** means the corporate and operational restructuring transactions provided for in Section 5.6 of the Plan.

100.    ***Schedules*** means the schedules, statements, and lists, if any, filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, if any, as may be amended or supplemented from time to time.

101.    ***Scheduling Motion*** means the motion filed by the Debtor, substantially contemporaneously with the filing of the Chapter 11 Case, satisfying the criteria set forth for a Scheduling Motion in Part III.A. of that certain General Order M-387, dated November 24, 2009, entered in the United States Bankruptcy Court for the Southern District of New York by The Honorable Stuart M. Bernstein and captioned In the Matter of the Adoption of Prepackaged Chapter 11 Case Amended Guidelines, Amending General Order 203.

102.    ***Scheduling Order*** means the order granting the Scheduling Motion and scheduling the Confirmation Hearing.

103.    ***Secured*** means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law,  or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.  For the avoidance of doubt, a Claim shall be "Secured" hereunder if such security would be recognized as valid and enforceable under applicable law of the foreign jurisdiction pursuant to which such security was created.

104.    ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77m, as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made applicable to the Chapter 11 Case.

105.    ***Shareholders*** means the direct and indirect shareholders of the Company:  Ocean Point; Roger Khafif; Upper Deck; Arias, Serna & Saravia; Espacios Urbanos, S.A.

106.    ***Solicitation Package*** means the package mailed to Holders of Claims entitled to vote to accept or reject the Plan, which package contains, among other things, (a) a copy of the Plan, (b) a copy of the Disclosure Statement, and (c) a Ballot, Ballot Instructions, and Ballot return envelope.

107.    ***Steering Group*** means Greylock Capital Management, LLC, Moneda Asset Management, Polo Capital Management, Trinidad and Tobago Unit Trust Corporation and Portfolio Credit Management Limited, all via managed or controlled accounts or funds, collectively holding or controlling in excess of 41.76% of the outstanding principal amount of the Existing Notes.

108.    ***Term Sheet*** means the term sheet annexed to the Plan Support Agreement.

109.    ***Trump License Agreement*** means the License agreement, dated as of March 16, 2006, originally, by and between Donald J. Trump, as original licensor, and K Group Developers, Inc., as original licensee, as assigned (i) to Licensor, pursuant to the assignment and assumption of license agreement, dated as of June 5, 2007, by and between Donald J. Trump and Trump Marks Panama LLC ("***Licensor***"), and (ii) to the Company, as licensee, pursuant the assignment and assumption of license agreement, dated as of June 5, 2007, among the Licensor, K Group Developers Inc. and the Company, as amended. Under the Trump License Agreement, the Company is required to pay variable license fees and royalties to Licensor for use of "Trump" name and marks.

110.    ***Trump Ocean Club*** means Trump Ocean Club International Hotel & Tower, located in Panama City, Panama.

111.    ***Upper Deck*** means Upper Deck Properties, S.A., a Shareholder.

112.    ***U.S. Trustee*** means the United States Trustee for the Southern District of New York.

113.    ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and interest, if any, for delinquent quarterly fees pursuant to section 3717 of title 31 of the United States Code.

114.    ***Unclaimed Property*** means unclaimed Cash held by the Disbursing Agent and any Distributions returned to or otherwise held by the Disbursing Agent on the Forfeiture Date as well as any other Distributions not claimed on the Forfeiture Date.

115.    ***Unexpired Lease*** means a lease to the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

116.    ***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

117.    ***Voting Deadline*** means 5:00 p.m. *(prevailing U.S. Eastern time)* on April 29, 2013, which is the deadline for submitting Ballots.

118.    ***Voting Report*** means the report prepared by the Balloting and Tabulation Agent which reports the results of the tabulation of votes to accept or reject the Plan.