1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 13-11396-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  NEWLAND INTERNATIONAL PROPERTIES, CORP.,

9

10              Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              May 17, 2013

19              10:05 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   (CC: Doc no. 7) Final Hearing RE: Debtor's Motion for Entry of

3   an Order (I) Authorizing Debtor to Continue Existing Cash

4   Management System, Bank Accounts, and Business Forms and (II)

5   Granting Extension of Time to Comply with the Requirements of

6   Section 345(b) of the Bankruptcy Code filed by David Michael

7   Feldman.

8

9   (CC: Doc no. 9) Final Hearing RE: Debtor's Motion for Entry of

10   Interim and Final Orders (A) Authorizing the Use of Cash

11   Collateral and (B) Scheduling a Final Hearing filed by David

12   Michael Feldman on behalf of Newland International Properties,

13   Corp.

14

15   (CC: Doc no. 14) Debtor's Motion for Entry of an Order Pursuant

16   to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code

17   Authorizing the Debtor to Employ and Retain Certain

18   Professionals Utilized in the Ordinary Course of Business filed

19   by David Michael Feldman on behalf of Newland International

20   Properties, Corp.

21

22

23

24

25

1  (CC: Doc no. 16) Debtor's Application for an Order Authorizing

2  and Approving the Employment and Retention of Epiq Bankruptcy

3  Solutions, LLC as Balloting and Tabulation Agent for the Debtor

4  Pursuant to 11 U.S.C. Section 327(a) and Fed. R. Bankr. P.

5  2014(a) Nunc Pro Tunc to the Petition Date filed by David

6  Michael Feldman on behalf of Newland International Properties,

7  Corp.

8

9  (CC: Doc no. 20) Debtors Application for an Order Approving the

10  Employment and Retention of Gibson, Dunn & Crutcher LLP as

11  Counsel for the Debtor in Possession nunc pro tunc to the

12  Petition Date filed by David Michael Feldman on behalf of

13  Newland International Properties, Corp.

14

15  (CC: Doc no. 21) Debtors Application for an Order Approving the

16  Employment and Retention of Adames, Duran, Alfaro & Lopez As

17  Panamanian Counsel for the Debtor in Possession nunc pro tunc

18  to the Petition Date filed by David Michael Feldman on behalf

19  of Newland International Properties, Corp.

20

21  (CC: Doc no. 22) Debtors Application for Entry of an Order

22  Authorizing the Employment and Retention of Gapstone LLC as

23  Financial Advisor to the Debtor in Possession nunc pro tunc to

24  the Petition Date filed by David Michael Feldman on behalf of

25  Newland International Properties, Corp.

(CC: Doc no. 41, 48, 49) Hearing RE: Notice of Presentment of an Order Approving the Employment and Retention of Greenberg Traurig LLP as Special Real Estate Counsel for the Debtor in Possession nunc pro tunc to the Petition Date filed by Eric J. Wise on behalf of Newland International Properties, Corp.

(CC: Doc no. 35, 36, 44, 47) Motion for Entry of an Order Authorizing the Debtor to File Under Seal Certain Confidential Plan Supplement Documents.

Transcribed by:  Penina Wolicki

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

1

2  A P P E A R A N C E S :

3  GIBSON, DUNN & CRUTCHER LLP

4          Attorneys for Debtor

5          200 Park Avenue

6          New York, NY 10166

7

8  BY:   J. ERIC WISE, ESQ.

9          SHIRA D. WEINER, ESQ.

10

11  GREENBERG TRAURIG LLP

12          Special Real Estate Counsel to Debtor

13          200 Park Avenue

14          New York, NY 10166

15

16  BY:   NATHAN A. HAYNES, ESQ.

17

18

19  UNITED STATES DEPARTMENT OF JUSTICE

20          Office of the United States Trustee

21          33 Whitehall Street

22          21st Floor

23          New York, NY 10004

24

25  BY:   SUSAN D. GOLDEN, ESQ.

1

2   SEWARD & KISSEL LLP

3          Attorneys for Steering Group of Noteholders

4          One Battery Park Plaza

5          New York, NY 10004

6

7   BY:   JOHN R. ASHMEAD, ESQ.

8

9

10  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

11         Attorneys for Trump Parties

12         1633 Broadway

13         New York, NY 10019

14

15  BY:   DANIEL A. FLIMAN, ESQ.

16

17

18  CHADBOURNE & PARKE LLP

19         Attorneys for HSBC as Indenture Trustee

20         30 Rockefeller Plaza

21         New York, NY 10112

22

23  BY:   DOUGLAS E. DEUTSCH, ESQ.

24

25

1

2    COHEN TAUBER SPIEVACK & WAGNER, P.C.

3        Attorneys for Hotel TOC, Inc.

4        And Owners Meeting of the P.H. TOC

5        420 Lexington Avenue

6        Suite 2400

7        New York, NY 10170

8

9    BY:    ANDREW L. BUCK, ESQ.

10

11

12    DLA PIPER LLP (US)

13        1251 Avenue of the Americas

14        New York, NY 10020

15

16    BY:    DANIEL G. EGAN, ESQ.

17

18

19

20

21

22

23

24

25

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    8

1                    P R O C E E D I N G S

2            THE COURT:  All right, please be seated.  We're here

3   in Newland International Properties, Corp., number 13-11396.

4            MR. WISE:  Your Honor, Eric Wise, Gibson, Dunn &

5   Crutcher, for the debtor, Newland International Properties,

6   Corp.  Good morning.

7            We have nine items on our agenda to be heard this

8   morning.  Eight of them are not contested.  One of them is the

9   subject of an objection.  I'm going to go through the various

10  motions in the order in the agenda, starting out with the first

11  motion, which is the debtor's motion for the entry of a new

12  interim -- a second interim order with respect to the cash

13  management system, and the granting of the extension of time to

14  comply with the requirements of 345(b).

15           On the first-day hearing on May 1st, the Court entered

16  an interim order, and the discussion at the first-day hearing,

17  was possibly doing a second interim order.  We've done that.

18  We've provided the revised order or the second interim order in

19  black-line form to the clerk.  And that order provides for an

20  extension to June 7th, which in the context of our schedule, is

21  a -- gives us roughly ten days after the confirmation hearing,

22  in order to -- assuming that the plan is confirmed -- go

23  effective.

24           THE COURT:  Ms. Golden?

25           MS. GOLDEN:  Your Honor, in terms of --

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    9

1          THE COURT:  Just pull the microphone a little closer

2     to you, okay?

3          MS. GOLDEN:  In terms -- let me just start generally

4     in terms of the uncontested matters.  We have reviewed all of

5     the various retention orders and the interim cash collateral

6     orders, and everything else, and we don't have any objection to

7     the form or substance of those.

8          THE COURT:  Thank you.  Anybody else wish to be heard

9     with respect to the second interim order for use of -- for the

10    cash management system, et cetera?

11         All right, it's granted.

12         MR. WISE:  Thank you, Your Honor.  Next on the agenda

13    is a similar motion for the entry of further interim relief for

14    the use of cash collateral.  Again, we provided copies of the

15    second interim cash collateral order to the clerk and along

16    with a black-line.  And again, that would extend that interim

17    order for the use of cash collateral to June 7th, ten days

18    after the confirmation hearing.

19         THE COURT:  Is there any change in the budget?

20         MR. WISE:  There's no change in the budget.

21         THE COURT:  All right.  Does anybody wish to be heard

22    with respect to the cash collateral motion?

23         All right, that's granted as well.

24         MR. WISE:  Your Honor, the next motion is for the

25    entry of an order related to ordinary course professionals and

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    10

1  the retention of ordinary course professionals.  The debtor's

2  motion and order lists three ordinary course professionals,

3  each of which are Panamanian law firms that provide legal

4  services to the debtor in the ordinary course, such as deed

5  processing, tax payments, and general litigation in Panama.

6          There's a monthly cap of 10,000 dollars per

7  professional, and also a maximum of 50,000 dollars per

8  professional, which is consistent with historical invoices for

9  these firms for the debtor.

10         THE COURT:  The one comment I would have there, as I

11 gather, Ms. Golden, you don't have any objections to this --

12 this was one of those that you indicated no objection to --

13 it's -- particularly dealing with foreign law firms, it's

14 extremely important that they follow the U.S. Trustee

15 Guidelines and the court's guidelines with respect to

16 preparation of fee applications.

17         In the past, at times, we've had some difficulty

18 because they're not used to our system and what the level of

19 detail that's required to be shown.  So it's really very

20 important that you or your colleagues have a discussion with

21 all the ordinary course professionals about -- I mean, they're

22 going to get paid as ordinary course professionals, but

23 nevertheless, their applications get reviewed.

24         MR. WISE:  We will coordinate with them --

25         THE COURT:  Okay.

1    MR. WISE:  -- and ensure that they understand how they

2    properly prepare their applications --

3    THE COURT:  Okay.

4    MR. WISE:  -- for their fees.

5    THE COURT:  All right.  Anybody else wish to be heard

6    with respect to the application to retain ordinary course

7    professionals?

8    All right, that's granted.

9    MR. WISE:  Thank you, Your Honor.  The next item on

10   the agenda, Your Honor, is the debtor's application for an

11   order authorizing the employment and retention of Epiq

12   Bankruptcy Solutions, LLC, as balloting and tabulation agent.

13   Epiq has obviously significant amount of experience as a

14   balloting and tabulation agent in Chapter 11 cases, including

15   prepackaged Chapter 11 cases.

16   Epiq had already been retained as the debtor's claims

17   and noticing agent in this case.  And they've received a 35,000

18   dollar retainer in connection with their retention, as both

19   claims agent and as balloting and tabulation agent at this

20   point.

21   THE COURT:  All right.  Anybody wish to be heard?

22   All right, it's granted.

23   MR. WISE:  Thank you, Your Honor.  The fifth item on

24   the agenda is the debtor -- the debtor's application for an

25   order approving the employment and retention of Gibson, Dunn &

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    12

1    Crutcher as counsel for the debtor.  Gibson Dunn has been

2    providing services to the debtor since 2007 in connection with

3    the original issuance of the bonds, and has continued to

4    provide services in connection with the bonds and ultimately

5    their restructuring.

6         Gibson Dunn did receive a retainer of 250,000 dollars

7    in advance of the case.  That retainer was used in its entirety

8    pre-petition.  And any residual amounts are being waived by

9    Gibson, Dunn & Crutcher.

10        THE COURT:  The waiver includes any -- for any work

11   that Gibson Dunn, pre-petition, has done for the debtor?

12        MR. WISE:  That's right.

13        THE COURT:  Okay.  All right.

14        MR. WISE:  That's right.

15        THE COURT:  Anybody else wish to be heard with respect

16   to the Gibson Dunn retention application?

17        All right, it's granted.

18        MR. WISE:  Thank you, Your Honor.  The next -- item 6

19   on the agenda is the debtor's application for an order

20   approving the employment of Adames, Duran, Alfaro & Lopez, also

21   known as Adural, as Panamanian counsel for the debtor.  The

22   debtor is a Panamanian corporation, and Adural serves as the

23   chief Panamanian counsel in the restructuring and has been

24   advising the debtor for several years and assisting it with the

25   restructuring of its pre-petition notes, and particularly with

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    13

1   respect to the Panamanian aspects:  the collateral, et cetera.

2          The debtor's intention is to continue to work with

3   Adural in connection with the restructuring and with the

4   issuance of the notes in connection with the plan.  And the --

5   we have included in our orders, both in Gibson Dunn's order and

6   with respect to Adural, a provision that makes it clear that

7   there's not an overlap between the two firms.  Obviously, they

8   do Panamanian law, and we are focusing exclusively on U.S. law

9   issues.

10          THE COURT:  And just address the issue of any pre-

11   petition amounts owed to the firm.

12          MR. WISE:  Adural has been paid in full for all of

13   their pre-petition amounts.

14          THE COURT:  All right.  Again, Mr. Wise, I think the

15   one thing I would -- is anybody from the firm here?

16          MR. WISE:  There's no one from the firm Adural here.

17          THE COURT:  Is anybody present on the phone from the

18   firm?

19          MR. WISE:  I don't believe so.

20          THE COURT:  All right.  Once again, I would just

21   emphasize the importance of complete compliance with our

22   requirements for preparation of fee applications.  I don't want

23   to have to start bouncing fee applications.  They've got to be

24   done right.  They've got to be done with the level of detail

25   that we require.  It's -- I'm just emphasizing it because in

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    14

1    past matters, I've found foreign law firms are not ordinarily

2    familiar with the requirements of the Bankruptcy Code and our

3    court's requirements and the U.S. Trustee's requirements.  It's

4    just going to result in fees -- and that goes for both fees and

5    expenses.  I expect full expense detail from any counsel,

6    foreign or domestic.  And I'm just harping on it.  Nothing

7    against them at all.  But I just -- the past experience has

8    shown a continuing problem.  So with that, anybody else wish to

9    be heard?

10            All right, it's approved.

11            MR. WISE:  Thank you, Your Honor.  The next item on

12    the agenda, agenda item 7, is the debtor's application for the

13    entry of an order authorizing the employment and retention of

14    Gapstone LLC as financial advisor for the debtor.  Gapstone has

15    been the debtor's financial advisor for a year and a half on

16    the matter of the restructuring of these notes and other

17    matters for the debtor.  They provide a broad range of

18    corporate advisory services, including corporate and financial

19    restructuring services.

20            The debtor -- excuse me -- Gapstone has intimate

21    knowledge of the debtor's business and affairs, and is being

22    retained because of its institutional knowledge, its

23    understanding of Latin American project transactions such as

24    this.

25            Gapstone did receive 110,000-dollar retainer prior to

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    15

1    the petition date, which was consumed in its entirety.  And
2    Gapstone had waived any pre-petition claim with respect to its
3    unpaid pre-petition fees.
4         THE COURT:  All right.  Does their indemnification
5    comply with the Blackstone protocol?
6         MR. WISE:  Yes, I believe they conformed that to
7    their -- the Blackstone protocol.
8         MS. GOLDEN:  Yes, Your Honor.  Originally the order
9    didn't.  It was drafted in a way that was not in conformance.
10   And we negotiated it so that it complies with all of the terms
11   of the Blackstone protocol, and what's standard --
12        THE COURT:  All right.  So you're satisfied at this
13   stage?
14        MS. GOLDEN:  Yeah.  Long story short, yes.
15        THE COURT:  Okay.  Anybody else wish to be heard with
16   respect to Gapstone's retention?
17        All right, it's approved.
18        MR. WISE:  Thank you, Your Honor.  The eighth item on
19   the agenda is for an order approving the employment and
20   retention of Greenberg Traurig as special real estate counsel
21   to the debtor under 327(e).  Greenberg Traurig had been special
22   counsel to the debtor for approximately eight years, and has
23   been instrumental in negotiating the licensing concessions in
24   particular, with the Trump organization, and will continue in
25   that capacity, in the case.

1      And Greenberg Traurig has not yet been paid for its
2  pre-petition services in April, which I have an outstanding
3  amount of about 79,000 dollars.  They have a 50,000 dollar
4  retainer, which they're seeking authority to apply to the pre-
5  petition amounts.

6      THE COURT:  Ms. Golden?

7      MS. GOLDEN:  It was my understanding that any pre-
8  petition balance in connection with their retainer was going to
9  be applied at the interim fee -- at the fee hearing -- at the
10 first interim fee hearing.

11     THE COURT:  Let me make -- I want to make sure I
12 understand.  Because they -- their retainer is not sufficient
13 to cover their pre-petition statements.

14     MS. GOLDEN:  Right.

15     THE COURT:  So what, it's going to leave a balance of
16 29,000 dollars --

17     MR. WISE:  That's right.

18     THE COURT:  -- Mr. Wise?

19     MR. WISE:  That's right.

20     THE COURT:  Which they're not waiving.

21     MR. WISE:  Which they are not waiving.

22     THE COURT:  And they are being retained as special --

23     MS. GOLDEN:  327(e) counsel.

24     THE COURT:  -- 327(e) counsel.  So are you satisfied
25 Ms. Golden?

 1          MS. GOLDEN:  Yes, Your Honor.

 2          THE COURT:  All right.  It's approved.

 3          MR. WISE:  Okay.  The last item on our agenda is the

 4  debtor's motion for an order authorizing the debtor to file

 5  under seal certain confidential plan supplement documents.  We

 6  filed a motion for the entry of an order to file these

 7  documents under seal.  Specifically, these documents relate to

 8  amendments to agreements with the Trump organization, which are

 9  intended to effect the licensor concessions that are described

10  in the plan disclosure documents and the material substance is

11  contained in those disclosure documents.

12          We've asked to file them -- the amendments themselves

13  as redacted documents, and we've also asked to file the

14  underlying documents entirely under seal, so that the -- to

15  serve the purpose of transparency, the actual amendments will

16  be filed in redacted form to show --

17          THE COURT:  Well, but the amendment -- I don't know

18  what the new amendments are going to look like, because -- but

19  I've looked at -- there's a whole series of amendments which

20  you're seeking to file under seal.

21          MR. WISE:  Right.

22          THE COURT:  They're not particularly revealing,

23  because they have a couple of sentences that they amend

24  specific sections of very lengthy documents.  So filing

25  amendments isn't going to tell anybody very much, I don't

 1    think.

 2            MR. WISE:  Well, the filing of the -- I mean, the

 3    filing of the amendments that are affecting the amendments that

 4    affect the license concessions, the other documents, which are

 5    the underlying documents, including the amendments, for

 6    example, 1 through 7 to the licensing agreement, the documents

 7    themselves contain confidential information in a large

 8    quantity.  And the notion --

 9            THE COURT:  Well, let me first tell you how unhappy I

10    am that you -- when did you deliver copies of these documents

11    to the U.S. Trustee?  Yesterday?  Ever?

12            MS. GOLDEN:  I got an e-mail from counsel at about

13    9:15 this morning, saying that the documents were dropped off

14    with the service center in our building.  And I -- they never

15    came up to me, nor would I go down to the service center.  And

16    then counsel gave me a copy right here in the courtroom.

17            THE COURT:  You know, Mr. Wise, I spent several hours

18    yesterday poring through this very thick notebook of documents

19    you're seeking to file under seal.  Your motion is denied

20    without prejudice.  Okay?

21            I take very seriously any request to seal documents.

22    Okay?  You're about the run this case off the track.  Okay?

23    You can't do what you did.  Any sealing motion has to provide

24    unredacted documents to the U.S. Trustee with sufficient time

25    for them to determine.  They filed their objection because they

1  hadn't seen any documents.

2         You now -- I thought they got them yesterday.  Now, I

3  find out they didn't even get them yesterday.  Okay?  And if

4  you really think that the U.S. Trustee can exercise its

5  responsibility when you dump a three-inch or a four-inch binder

6  on them at the start of a hearing, for sealing of documents, my

7  standard -- and I've written a bunch of opinions on it, I'm

8  sure you're aware of it, they're cited in the U.S. Trustee's

9  objection -- is that redaction rather than wholesale sealing is

10  my approach to documents.

11        Yes, when documents -- and yes, it looks like there

12  are things within these documents that may properly be

13  redacted.  But I don't believe in wholesale redacting.  And I

14  don't believe -- this is an adversary process.  The importance

15  of transparency in bankruptcy is essential.  There is no

16  committee at this point, Ms. Golden, is that right?

17        MS. GOLDEN:  No, Your Honor.  Because this is a pre-

18  negotiated case, we're holding off.  And if things derail --

19        THE COURT:  All right.

20        MS. GOLDEN:  -- toward the end, then we'll solicit.

21  But we've agreed not to.

22        THE COURT:  So you've already probably -- you may have

23  knocked your case off the rails in getting your confirmation

24  hearing when you want.  Okay?  You can't proceed that way in my

25  court, Mr. Wise.  Why you thought so, I don't know.

1          MR. WISE:  Just to explain for a moment.  I mean, the

2    amendment documents themselves --

3          THE COURT:  They're not done yet.

4          MR. WISE:  And they weren't done to a point where it

5    was available until yesterday.  And there was some confusion

6    about the delivery of the documents.  And I apologize that they

7    weren't delivered to the U.S. Trustee until this morning or --

8          THE COURT:  Well, those are the existing documents.

9    Those aren't even the new documents.  Those, I haven't seen yet

10   either.  All I've seen is this whole series of prior

11   agreements, amendments.  Do I have what you're proposing now?

12         MS. WEINER:  Yes, Your Honor.  Shira Weiner; Gibson,

13   Dunn & Crutcher.

14         THE COURT:  When did I get them?

15         MS. WEINER:  They're in that binder.  I'm sorry if

16   there's some confusion.  Documents 5 through 8 in the binder --

17         THE COURT:  Those are the ones that you want to

18   redact.

19         MS. WEINER:  -- are the new amendments that would be

20   redacted.

21         THE COURT:  I did look at those.  Okay.  It wasn't

22   clear to me what those were.

23         MS. WEINER:  Yes.  Sorry, I apologize for not being

24   that clear.  So documents 1 through 4 in the binder are the

25   underlying agreements that are already in existence.  And 5

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    21

1  through 8 are the amendments -- the new amendments that are

2  being proposed to be in redacted form, with the redactions

3  indicated in the highlighting.  Thank you.

4           THE COURT:  Your motion is denied without prejudice.

5  You may have just lost your confirmation hearing.

6           MR. WISE:  What we would intend to do --

7           THE COURT:  Go negotiate with the U.S. Trustee over

8  sealing and redaction.  Okay.

9           MR. WISE:  Thank you, Your Honor.

10          THE COURT:  You know, I spent time -- just stand up

11 there at the podium.  I spent some time reviewing the

12 documents, trying to understand what they are and why the

13 documents in their entirety need to be sealed.  I certainly

14 read in the disclosure statement that you are offering to make

15 the documents available -- I guess unredacted documents

16 available to parties entitled to vote, which I guess you're

17 saying is only the secured creditors -- they're the only

18 impaired class, in your view.  Is that right?

19          MR. WISE:  That's correct.

20          THE COURT:  If they sign the confidentiality

21 agreement.  That may be sufficient.  I don't know.  But we have

22 an adversary system.  And unless the U.S. Trustee has had an

23 opportunity with sufficient time to review the documents and

24 determine what its position is, I'm not going to rule on the

25 merits of your motion.  Okay?

1          And a couple of things I've observed.  Obviously,

2    you've had considerable negotiations with the Trump

3    organization.  And I appreciate that.  Okay?  And I didn't have

4    time to go back to read the disclosure statement in full.  Can

5    you tell me with the concessions that have been made -- because

6    they refer to quite a few agreements -- what the net reduction

7    in expenses going forward to the debtor will be as a result of

8    the concessions?

9          MR. WISE:  Yes, I can tell you.  It is set forth in

10   the disclosure.  And I can also --

11         THE COURT:  Walk me through it.

12         MR. WISE:  -- maybe amplify it.  Okay.

13     (Pause)

14         MR. WISE:  Yes, Your Honor.  I'm --

15         THE COURT:  Bear with me a second.

16         MR. WISE:  Sure.  So --

17         THE COURT:  Just a second.

18         MR. WISE:  Sure.

19     (Pause)

20         THE COURT:  All right, what page are you on?

21         MR. WISE:  Page 28 of the disclosure statement.

22     (Pause)

23         THE COURT:  Okay, go ahead.

24         MR. WISE:  So on the bottom of page 28, it explains

25   with respect to the licensing agreement, they've agreed to

NEWLAND INTERNATIONAL PROPERTIES, CORP.                              23

1  reduce the amounts payable to Trump Marks Panama, LLC by

2  approximately fifty percent.  I don't have a --

3          THE COURT:  Where is that?  I didn't --

4          MR. WISE:  It's in 4(a) on page 28.

5          THE COURT:  How much is it in dollars?

6          MR. WISE:  The specific dollars amount --

7          THE COURT:  Yes, the specific dollar amount?

8          MR. WISE:  My understanding is that the Trump parties

9  are concerned that we -- if we publicly disclose the specific

10 dollar amounts, that that's a key component of the confidential

11 information, Your Honor.

12         THE COURT:  So creditors reading the disclosure

13 statement don't know what -- how much is being saved by the

14 concessionary amendments?

15         MR. WISE:  In an exact dollar amount?  No, Your Honor.

16         THE COURT:  What else?  What other changes?  I saw a

17 million dollar figure somewhere in there.  I read this section.

18 This is what I read this morning.  It's hard to follow.  Each

19 of the fees are for many agreements.

20         Mr. Wise, each of the agreements, at least the ones

21 that I looked at this morning, the main agreements, have ipso

22 facto clauses such that the filing of the bankruptcy petition

23 is an event of default.  Now, there's certainly a question with

24 365(e) whether those are enforceable or not.  In most cases, I

25 wouldn't even have an issue about it, but because all the

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    24

1    property is in Panama, I do have an issue about it.  What's

2    the -- is there any waiver of the ipso facto clauses in any of

3    the agreements.

4              MR. WISE:  Parties from the Trump --

5              THE COURT:  The only way I learned --

6              MR. WISE:  -- organization is here.

7              THE COURT:  -- about that was by reading the

8    unredacted documents, and I see the ipso facto clause, even

9    though there's a New York governing law clause.  So do you have

10   an express waiver of the ipso facto clauses?  Don't

11   creditors -- aren't they entitled to know that the agreements

12   have ipso facto clauses and the filing of the petition was an

13   event of default, if they're enforceable?

14             MR. WISE:  You mean, in the underlying documents --

15             THE COURT:  Yes, the underlying documents --

16             MR. WISE:  -- in the amendments --

17             THE COURT:  -- each has an ipso facto clause.

18             MR. WISE:  -- contain a waiver the ipso clause --

19             THE COURT:  Stop.  Don't talk when I'm talking.

20             Each of the documents that I reviewed contain an ipso

21   facto clause that made an event of default, the filing of a

22   voluntary petition, which has happened here.  In all

23   likelihood, it's not enforceable under 365(e).  In most cases I

24   wouldn't think twice about it.  But because all the property's

25   in Panama, I do think twice about it.

 1           Are creditors entitled to know that -- and I think I

 2   saw that Trump was reserving all its rights.  So I don't know

 3   whether they've -- have they waived the ipso facto clauses?  Is

 4   anybody here from Trump?

 5           MR. FLIMAN:  Good morning, Your Honor.  Daniel Fliman,

 6   with Kasowitz, Benson, Torres & Friedman on behalf of Trump

 7   parties.  Your Honor, what we can certainly do is add something

 8   to the unredacted portion of the amendments to make clear --

 9   the deal here would be, Your Honor, that the underlying

10   agreements would be assumed with the --

11           THE COURT:  I saw that.  They're being assumed.  That

12   was part of the deal.  They were going to be assumed.

13           MR. FLIMAN:  And, Your Honor, we can add a provision

14   into the unredacted portion of these agreements, so that

15   anybody reviewing them could see that we're not going to use

16   the bankruptcy filing as a basis for calling any kind of

17   default.

18           Your Honor, if I could make one more point.

19           THE COURT:  Go ahead.

20           MR. FLIMAN:  I'm sorry, not to step into the line of

21   fire on --

22           THE COURT:  No, that's okay.

23           MR. FLIMAN:  -- this, but --

24           THE COURT:  You can step into the line of -- my gripe

25   is not that -- you filed a joinder and I'm not saying that

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    26

 1  there isn't a lot of stuff in these agreements that should be
 2  sealed.  But if you read my opinions, you know that my
 3  presumption is for redaction.  But it's impossible in an
 4  adversary system to know the only other party here who can have
 5  a say in this is the U.S. Trustee.  And you dumped this -- not
 6  you personally -- somebody dumps it on the U.S. Trustee this
 7  morning.  And you expected her to react to this big, thick
 8  binder of agreements.
 9          MR. FLIMAN:  Your Honor, I think -- I just wanted to
10  provide our views.  Maybe we could look at it this way.
11  Because when the debtors came to us and said we understand
12  there's confidentiality provisions, but we think we should file
13  the following documents with the plan supplement, our view was
14  that sure, the amendments, that would make sense that would be
15  included in the plan supplement.  That's something the Court
16  would need to approve.  That's something that's integral to the
17  plan.  That's something that people would need to know about.
18          But the underlying documents are not things that, in
19  our view, need to even be included in the plan supplement.  I
20  mean, you often have bankruptcy cases where you have a
21  confirmation, you have a plan supplement, and the documents
22  that are being assumed don't all be included on the plan
23  supplement.  I mean, that's actually more the exception than
24  the rule.
25          And so our view was that sure, you could include the

1   amendments, and it makes sense to redact the economic terms on

2   that, but the underlying documents, I don't think need to be in

3   the record at all, Your Honor.  That's our view.  And I just

4   wanted to throw that into consideration.

5           THE COURT:  Okay.  Let me -- can you tell me what

6   the -- because there are amendments to multiple agreements.

7   Can you tell me what the aggregate savings to the debtor, from

8   all agreements -- the concessions that are being made in all

9   the agreements.  I mean, isn't that material information that

10  needs to be disclosed before I -- publicly disclosed, before I

11  can confirm the plan?  I mean, otherwise, who knows what it is?

12  I don't know what it is.  I'm the judge, and I don't know.

13  Okay?

14          I saw that fifty percent, Mr. Wise, when I looked

15  through it.  Why do you think I asked you the question what's

16  the dollar savings?  Because I have no idea what the dollar

17  savings is.  You talk about these concessions being essential

18  to the reorganization of the debtor.  And it probably is

19  essential to the reorganization of the debtor.

20          But without knowing what the existing annual costs are

21  and what they're going to be after, I have no idea what the

22  impact of these concessions are.  I don't approve plans when I

23  don't understand them.  And it's one thing -- yes, I mean, I

24  read stuff that's under seal.  I read this stuff quickly and

25  don't have the grasp on it.  Today's not the confirmation

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    28

1  hearing, I understand.  But then the question is, do creditors

2  understand what's the impact.

3        When you say that these concessions are essential to

4  the reorganization, but you don't tell creditors what the

5  impact of them are -- how many creditors have signed

6  confidentiality agreements to get the unredacted documents?

7        MR. WISE:  To date there -- no one has signed a

8  confidentiality agreement.

9        THE COURT:  Ms. Golden, how much time do you want to

10  review the documents?

11        MS. GOLDEN:  Well, today is Friday, Your Honor.  And I

12  would like till at least Tuesday or Wednesday.

13     (Pause)

14        THE COURT:  Mr. Ashmead, you represent, what?  And ad

15  hoc committee?

16        MR. ASHMEAD:  Yes, Your Honor.  John Ashmead; Seward &

17  Kissel; for the steering group.  A few observations, Your

18  Honor.

19        Just to be clear, my group is described as holding

20  forty-two percent of the principal amount of the outstanding

21  notes.  In fact, two of our holders, before the voting

22  concluded, but after the record date, bought bonds in the open

23  market.  So we're effectively -- we're over fifty percent of

24  that group.

25        My group, while not seeing the underlying documents,

NEWLAND INTERNATIONAL PROPERTIES, CORP.                    29

1  because we were -- Trump didn't want us to see the underlying

2  documents either -- did understand the underlying economics

3  were shared with my group, and that's how we came to our

4  decisions.  I would note -- and it may not be fully

5  satisfactory to Your Honor, but the projections, of course, on

6  an aggregated business, in the broker-commission area and the

7  Trump license fees, in an aggregate numbers, show the result of

8  those reductions going out.  Although it's not broken out, as

9  we understood, because Trump was very sensitive about breaking

10  out the specifics and what that may say to --

11          THE COURT:  So you represent about fifty percent?

12          MR. ASHMEAD:  I think.  Yes, over -- I think it's

13  fifty-two or fifty-three, probably, at this point.

14          THE COURT:  So Mr. Wise, have the economics been

15  disclosed to the other roughly fifty percent of noteholders?

16          MR. WISE:  Not beyond what's set forth in the

17  disclosure statement.

18          THE COURT:  This isn't going to fly, Mr. Wise.  It's

19  not going to fly with me.  Okay?

20          I don't approve plans when it's a black box that

21  nobody gets a peek in.  It's one thing to say whether the

22  license agreements -- and you know, Ms. Golden, don't take from

23  my comments today that I think these license agreements and

24  operating agreements and management agreements all should be

25  made public, because I don't feel that way.  Okay?

1          Sometimes, as a substitute for the agreements, some

2   kind of summary sheet that would explain key terms:  the

3   duration, what the term in the agreements are, and some other

4   key aspects, may -- may -- not necessarily -- may be a

5   reasonable substitute.  But unless the people who are get --

6   the institutions that are getting to vote on the plan are told

7   what the economics of the deal are, that is not providing the

8   transparency that's required to approve a plan.

9          So you're headed to a bad result.  You are headed to a

10  bad result.  Go to Panama.  If you want to conduct your

11  proceeding in secrecy, go do it in Panama.  Don't do it in this

12  court in front of me.

13          MR. WISE:  With respect to the disclosures with

14  respect to the Trump concessions, the -- I assume that the

15  absolute amount of the dollar amount of what that represents in

16  terms of the contribution based on the projections is the

17  number that would clarify --

18          THE COURT:  I don't know.

19          MR. WISE:  -- the issue.

20          THE COURT:  You're -- I'm groping at an elephant

21  blindfolded.  All right.

22          Rather than denying the sealing motion without

23  prejudice, I'm going to continue the matter until Wednesday --

24  I'm out Monday and Tuesday -- Wednesday at 9 o'clock.

25          Ms. Golden, are you able to make it at 9 o'clock?

1          MS. GOLDEN:  Yes, I am, Your Honor.

2          THE COURT:  Because I've got matters at 10, 11, 2, 3,

3  4.  But I will continue this sealing motion until Wednesday,

4  May 22nd, at 9 a.m.  You've got to work it out.  I'm telling

5  you right now, you better work this out.

6          And I think I made this clear, Ms. Golden, I'm not --

7  look, I didn't read every page of what's in here.  I spent time

8  going through it.  Because a lot of stuff is clearly entitled

9  to protection under 107(b).  I don't doubt that.  Okay?  I want

10 to be sure that creditors voting on this plan have enough

11 information to make -- you're getting a combined hearing on a

12 disclosure statement and plan because it's a pre-pack.  Right

13 now, when I went back over this portion of the disclosure

14 statement this morning, it didn't answer my questions.

15         I looked at documents trying to figure out how they

16 all fit together, what the costs of -- to the debtor were, what

17 the concessions were.  And I couldn't figure it out.  And

18 that's not good enough for me.  And so you're going to get to a

19 hearing, whether it's May 28th or another day, and I'm going to

20 say you haven't provided adequate information, because I can't

21 figure this out.  I don't know what the economics are.

22         And I don't think -- Mr. Ashmead may not have seen the

23 documents, and I don't know the detail -- how much information

24 he was provided on the economics.  He says he understands the

25 economics of them.  I don't doubt that.  But there's a lot of

1  noteholders who aren't represented by Mr. AShmead at this

2  point.  They're being asked -- they voted already, I guess,

3  from what you said.  There was -- what's the percentage of

4  bonds that voted in favor, pre-petition?

5           MR. WISE:  Seventy percent -- slightly over.

6           MR. ASHMEAD:  Seventy percent of the aggregate issue,

7  Your Honor, which a hundred percent of those voting voted in

8  favor.

9           THE COURT:  Right.

10          MR. ASHMEAD:  Just to be clear.

11          THE COURT:  Right.  So all of your group voted in

12  favor.

13          MR. ASHMEAD:  And another --

14          THE COURT:  And another twenty percent --

15          MR. ASHMEAD:  -- twenty --

16          THE COURT:  -- or something.

17          MR. ASHMEAD:  Actually, because my group was only

18  forty-two because the voting deadline, really it was another

19  thirty percent that voted in favor.  With my group, with the --

20  and the person who sold, or the entity that sold, that was not

21  a voting party, really it would be much higher, closer to

22  ninety percent, when you take that.

23          THE COURT:  See if you can work out with the U.S.

24  Trustee and the Trump parties -- I understand they want to

25  limit what the disclosure is, with Mr. Ashmead.  You all ought

1   to see whether you can come up with something that is a

2   reasonable substitute for the documents.  You've got to

3   disclose enough.  So, the ruling for today is to continue the

4   hearing on the sealing motion until May 22nd at 9 a.m.

5          MR. ASHMEAD:  Your Honor, may I just ask a question.

6   If we resolve it before then, can we alert Your Honor to that

7   so as --

8          THE COURT:  Well, the problem, Mr. Ashmead, is I'm out

9   of town Monday and Tuesday.

10          MR. ASHMEAD:  Oh, okay.  I'm sorry.

11          MS. GOLDEN:  And also, I have to read it.

12          MR. ASHMEAD:  Understood.  We're going to help you.

13          MS. GOLDEN:  Thank you.

14          THE COURT:  Look if you -- if you get it resolved

15   before then, you can put it in the form of a consent order and

16   get it to my chambers, and they'll let me know.  But it's going

17   to be difficult.

18          MR. ASHMEAD:  Understood, Your Honor. Thank you.

19          THE COURT:  And I'll decide before -- your

20   confirmation hearing may be adjourned, just be very aware of

21   that.  I'm not doing that yet, but you may well get adjourned

22   because -- let's take it one step at a time.

23          MR. WISE:  Understood.  One question I have.  We were

24   intending to file a plan supplement at the end of the day

25   today.  There are lots of -- there are additional other

1   documents which we will be prepared to file by the end of the

2   day today with respect to the indenture.  Should I --

3          THE COURT:  Go ahead and file as much --

4          MR. WISE:  -- assume we should go ahead and file as

5   much --

6          THE COURT:  Yeah, go ahead and --

7          MR. WISE:  -- okay.

8          THE COURT:  -- file as much as you can.

9          MR. WISE:  Thank you.

10          THE COURT:  Ms. Golden, is there anything you want to

11   add?  I didn't even -- I mean, obviously, I read your

12   objection.  But I just -- the biggest problem I have is I mean,

13   you know, you can't hold stuff back from the U.S. Trustee.

14          MS. GOLDEN:  Yes, Your Honor.  Just -- and it's really

15   more directed toward the -- toward counsel.  Obviously we

16   understand taking a very aggressive broad view of this.  But

17   there was a history of cases that involved the Trump

18   organization which takes -- which starts off sort of on this

19   foot, from when the Plaza Hotel filed fifteen, twenty years

20   ago --

21          THE COURT:  You know, actually, I don't want to hear

22   about the history.

23          MS. GOLDEN:  Okay.

24          THE COURT:  I only want to deal with the case that's

25   before me.

1          MS. GOLDEN:  Fair enough.  Fair enough.  You know, as

2    Your Honor knows and I think the attorneys in the courtroom

3    that I've worked with, we do try very hard to work with the

4    parties.  But it really is a two-way street.  So we would

5    appreciate the same courtesies that you would give others.

6          THE COURT:  Okay.  That completes us for today.

7          MR. WISE:  Thank you, Your Honor.

8          THE COURT:  All right.  We're in recess until 11

9    o'clock.

10          MR. WISE:  Thank you, Your Honor.

11      (Whereupon these proceedings were concluded at 10:46 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    **I N D E X**

3

4                                    RULINGS

5                                                        Page      Line

6   Debtor's second interim cash management        9        12

7   motion, granted.

8   Debtor's interim cash collateral motion,       9        24

9   granted.

10  Debtor's motion to retain ordinary course     11         9

11  professionals, granted.

12  Debtor's application to retain Epiq as        11        23

13  balloting agent, granted.

14  Debtor's application to retain Gibson, Dunn & 12        18

15  Crutcher, granted.

16  Debtor's application to retain Adural as      14        11

17  Panamanian counsel, granted.

18  Debtor's application to retain Gapstone as    15        18

19  financial advisor, granted.

20  Debtor's application to retain Greenberg      17         3

21  Traurig as special counsel, granted.

22  Motion to file under seal is continued to May 30        23

23  22, 9 a.m.

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

11    _____

12    PENINA WOLICKI

13    AAERT Certified Electronic Transcriber CET**D-569

14

15    eScribers

16    700 West 192nd Street, Suite #607

17    New York, NY 10040

18

19    Date:  May 20, 2013

20

21

22

23

24

25