# TRUMP OCEAN CLUB
## AMENDED SUMMARY OF TRUMP AGREEMENTS
## AND CONCESSIONARY AMENDMENTS

Below is a summary of the material terms of certain amendments that the Debtor proposes to effectuate in connection with its plan of reorganization, along with a description of the salient provisions of the corresponding underlying agreements among the Debtor and certain counter-parties. The Debtor provides this summary solely for descriptive and explanatory purposes. In all circumstances, the texts of the agreements shall govern and nothing contained in this summary does or shall be deemed to alter or to amend any of the provisions of the agreements summarized or referenced herein.

### PARTIES

**Beach Club Owner:** Ocean Pearl Island Corp., a Panamanian corporation

**Condominium Manager:** Trump Panama Condominium Management LLC, a Delaware limited liability company

**Co-Trustee:** Global Financial Funds Corp, a *sociedad anonima*, solely in its capacity Co-Trustee

**Debtor:** Newland International Properties Corp., a Panamanian corporation

**Hotel Asset Manager:** Ocean Point Development Corp., a Panamanian corporation

**Hotel Operator:** Trump Panama Hotel Management LLC, a Delaware limited liability company

**Hotel Owner:** Hotel TOC Inc., a Panamanian corporation

**Licensor:** Trump Marks Panama LLC, a Delaware limited liability company

**Owners Meeting:** the supreme body of all owners of units in the P.H. TOC.

**P.H. TOC:** that certain Horizontal Property Regime known as the P.H. TOC.

**Trustee:** CSC Trust Company of Delaware, a Delaware corporation, solely in its capacity as Trustee.

**Trump Parties:** Licensor, Condominium Manager and Hotel Operator.

1

## GENERAL DESCRIPTON OF PROJECT

Debtor, as promoter and developer, has registered with the Property Section, Panama Province, of the Public Registry, the Co-Ownership Regulations (the "**Co-Ownership Regulations**") of that certain Horizontal Property Regime known as the P.H. TOC (the "**P.H. TOC**"), established over that certain real property two hundred and thirty four thousand two hundred and forty (234240), registered in Document six hundred and seven thousand eight hundred and seventy (607870), location Code eight seven zero eight (8708) of the Property Section, Panama Province, of the Public Registry, in accordance with the Legal Provisions of Law thirty one (31) of June eighteenth (18), two thousand and ten (2010) and other pertinent legal provisions, improved and consisting of a 70 story building (the "**Building**") subdivided into ("**Casino Units**"), commercial units ("**Commercial Units**"), hotel units ("**Hotel Units**"), a hotel administrative unit ("**Hotel Administrative Unit**", together with the Hotel Units ("**Hotel**"), hotel amenities units ("**Hotel Amenities Units**"), office units ("**Office Units**") and residential units ("**Residential Units**" and, collectively with the Casino Units, Commercial Units, Hotel Units, Hotel Administrative Unit, Hotel Amenities Units and Office Units, the "**Units**").

As of the April 30, 2013, (i) 339 or 54% of the Residential Units have been sold, (ii) 168 or 46% of the Hotel Units have been sold, (iii) 97 or 97% of the Commercial Units have been sold, (iv) the Hotel began operation on July 6, 2011, (v) a framework agreement has been entered into with respect to the creation of a gambling casino in the Casino Units, (vi) a related Beach Club (described in the Plan) is under construction and intended to be opened by September 30, 2013 and (vii) Debtor is actively seeking a developer and operator for the Spa (also, described in the Plan) to be located in the Hotel.

## GENERAL DESCRIPTON OF RESTRUCTURING

Debtor has obtained the approval of the Prepackaged Plan (defined below) by the holders ("**Holders**") of Debtor's senior secured notes ("**Notes**"), which Notes are secured by substantially all of Debtor's interest in or with respect to the Building, with respect to certain defaults under the Notes and in order to restructure the Notes and cure such defaults (the proposed "**Notes Restructuring**"), as outlined in that certain Newland International Properties, Corp., Settlement Term Sheet, dated January 23, 2013 (the "**Proposed Restructuring Plan**"), which Proposed Restructuring Plan, as of the date hereof, remains subject to final documentation ("**Final Restructuring Documents**"), to be approved by a court of competent jurisdiction (the "**Required Approvals**") and, in order to assure such Required Approvals, Debtor has commenced a voluntary reorganization proceeding under Chapter 11 of the United States Bankruptcy Code (the "**Reorganization Proceeding**") by the filing of a prepackaged plan of reorganization of Debtor, as debtor-in-possession (the "**Prepackaged Plan**") and is seeking a final court order, no longer subject to appeal or rehearing, approving the Final Restructuring Documents and Prepackaged Plan (the "**Final Order**").

Trustee is the trustee under that certain Indenture, [dated as of ____, 2013][1] (as the same may hereafter be amended, supplemented, assigned and/or replaced, the "**Indenture**"), pursuant to

---

[1] To be entered into upon the confirmation of the Prepackaged Plan.

which Debtor has issued the Notes.  Co-Trustee is the co-trustee under that certain Amended and Restated Agreement of Appointment and Acceptance of Co-Trustee, [dated as of _____, 2013][2] (the "**Co-Trustee Agreement**"), by and among Debtor, Trustee, HSBC Bank USA, N.A., a national banking association (in its capacity as trustee under the Extinguished Notes, as defined in the Co-Trustee Agreement), HBSC Investment Corporation (Panama), S.A. (in its capacity as co-trustee under the Extinguished Notes, as defined in the Co-Trustee Agreement), and Co-Trustee and, in such capacity, Co-Trustee is also the mortgagee under that certain Panamanian registered mortgage on the Building (the "**Mortgage**"), trustee with respect to certain trust accounts ("**Trust Accounts**") and trustee, pledgee or secured party with respect to certain other collateral documents securing the Notes and the Indenture (the Notes, the Indenture, the Co-Trustee Agreement, the Mortgage and all other agreements, instruments and documents evidencing, securing or ancillary to any of the foregoing, collectively, the **Indenture Documents**").

## TRUMP AGREEMENTS TO BE AMENDED

The "**Trump Parties**", respectively, Licensor, Condominium Manager and Hotel Operator, each an affiliate of Donald J. Trump, are parties to the following agreements (the "**Trump Agreements**") respecting the Building, each of which is to be amended pursuant to the Concessionary Amendments (described below), such amendments to be effective upon the confirmation of the Plan and the satisfaction of certain other conditions as set forth in the Concessionary Amendments:

(i)   License Agreement (described below), pursuant to which Licensor has licensed to Debtor the use of certain Trump Marks for use in the name of the Building and certain related marketing and other purposes,

(ii)  Condominium Management Agreement (described below), pursuant to which Condominium Manager manages P.H. TOC;

(iii) Hotel Management Agreement (described below), pursuant to which Hotel Operator manages the Hotel and provides certain related services to other parties, and

(iv)  Pre-Opening Services Agreement (described below), pursuant to which Hotel Operator performed certain services prior to the opening of the Hotel and pursuant to which the parties have continuing post-opening obligations with respect to facilities yet to be completed.

## TOTAL SAVINGS

**The Debtor projects that the total savings over the life of the Notes will be: approximately $20MM[3] in connection with the Trump Concessionary Amendments.  These savings will be achieved as a result of i) a reduction in License Fees, ii) the reduction of Base Fee Hotel, iii) the elimination of the Participating Units Minimum Fee, iv) the reduction of the Non-**

---

[2] To be entered into upon the confirmation of the Prepackaged Plan.
[3] Trump expresses no opinion as to the projected savings.

3

**Participating Units Minimum Fee, v) the delay in commencement of payment of the Incentive Fee and the reduction of the Incentive fee, and vi) the elimination of the Condominium Management Fee (all as defined below). With regard to the License Agreement, the parties have agreed to reduce amounts otherwise payable by Debtor to Licensor, by approximately 50%, and such License Fees will be paid pursuant to a reduced market-range license fee comprised of a base rate with escalation based on price increases and a cumulative aggregate maximum amount. The anticipated benefits of these concessions are reflected in the financial projections included in the Disclosure Statement.**

WDC 372804745v10

# DESCRIPTION OF TRUMP CONCESSIONARY AMENDMENTS AND UNDERLYING DOCUMENTS

In connection with each of the amendments summarized below, the corresponding Trump Party has agreed to waive any default or termination arising solely from the commencement of the Debtor's Chapter 11 bankruptcy proceeding.

I.  **EIGHTH AMENDMENT TO LICENSE AGREEMENT**

   a. **Parties:** Debtor and Licensor

   b. **Description of License Agreement:**

   i. General Description: Donald J. Trump ("**Trump**"), as the original licensor, and K Group Developers Inc. ("**K Group**"), as the original licensee, entered into that certain License Agreement dated as of March 16, 2006, as assigned by Trump to Licensor, and by K Group to Debtor, pursuant to those certain Assignment and Assumption Agreements, each dated June 5, 2007, and as amended by the certain First Amendment to License Agreement effective June 19, 2007, Second Amendment to License Agreement effective September 15, 2007, Third Amendment to License Agreement effective October 12, 2007, Fourth Amendment to License Agreement effective August 11, 2008, Fifth Amendment to License Agreement dated May 6, 2010, Sixth Amendment to License Agreement dated July 15, 2010, and Seventh Amendment to License Agreement dated April 13, 2011. Upon the effectiveness of the Plan and the satisfaction of certain conditions to effectiveness, the License Agreement is to be amended further by the Eighth Amendment thereto (described below).

   ii. Purpose:

   1. Licensor grants Debtor the right to use the name "Trump Ocean Club International Hotel & Tower, Panama" and "Trump Ocean Club" for the purpose of identifying the Building and marketing the Building.
   2. Sets forth certain development and operational standards which Debtor must maintain.
   3. Sets forth deadlines which Debtor must meet in connection with the construction of the Building, the Beach Club, the Spa and the Casino (each as described in the License Agreement).
   4. Sets forth approval rights by which Licensor has the right to approve (i) design plans for the Building, (ii) matters relating to the sales, leases, membership, management and operations of the Units and Beach Club, and (iii) general approval rights over all aspects of the operation, marketing and management of the Building.
   5. Sets forth license fees ("**License Fees**") which consist of (i) a flat fee paid upon execution of the original License Agreement, (ii) a unit sale license fee, including base and incentive fees, for individual Unit sales based on

5

the type of Unit sold and scheduled percentages of the gross sales price for such Unit, (iii) a leasing license fee calculated as a certain percentage of all consideration paid in connection with the leasing of the Commercial Units, and (iv) product royalty fees calculated as certain percentages of gross proceeds from wholesale and retail sales of Trump related products..

c. **Effect of Trump Eighth Amendment to License Agreement**

    i. General.
   1. Establishes the opening date of the Hotel as July 6, 2011.
   2. Sets forth completion date for delivery of Beach Club as September 30, 2013.
   3. Requires Debtor to use best efforts to deliver the spa and casino as soon as practicable.
   4. Grants Licensor reasonable consent rights on choice of spa operator and name of spa.
   5. Establishes that, upon its effectiveness of the amendment, certain defaults will be deemed cured.
   6. Requires Licensor's approval if the Indenture is modified by Debtor in a manner that causes a material adverse effect on the payment mechanisms under the Indenture or payment priorities set forth in the License Agreement, or on the interests of the Licensor (or any of its affiliates) in connection with the operation of the Building or any material part thereof as operated and administered, under any of the Trump Agreements.

    ii. Economics.
   1. Applies uniform discount to all gross license fees on sales of Units.
   2. Establishes amount of past-due accrued gross license fees (plus accrued default interest) and application of the discounts thereto.
   3. Establishes a monthly installment payment plan for past due accrued license fees, until discounted past due accrued amount is fully paid.
   4. Clarifies payment mechanics for license fees by requiring Debtor to issue certifications identifying amounts deposited, reserved and payable in respect of license fees in certain Debtor trust accounts.
   5. Establishes payment default terms and when default interest may accrue on unpaid amounts.
   6. Permits Debtor to finance Unit sale, provided the applicable license fees continue to be paid upon closings of such Unit sales.

6

II. **FIRST AMENDMENT TO AMENDED AND RESTATED HOTEL MANAGEMENT AGREEMENT**

    a. **Parties:** Hotel Operator, Debtor, Hotel Asset Manager, Hotel Owner and Owners Meeting

    b. **Description of Amended and Restated Hotel Management Agreement:**

        i. General Description: Hotel Operator, as operator, Debtor, Hotel Asset Manager, Hotel Owner and Owners Meeting Hotel Owner, as owner, and Hotel Asset Manager, as hotel asset manager, entered into that certain Amended and Restated Hotel Management Agreement dated April 13, 2011. Upon the effectiveness of the Plan and the satisfaction of certain conditions to effectiveness, the Hotel Management Agreement is to be amended by the First Amendment thereto (described below).

        ii. Purpose:

1. Sets forth obligations of Hotel Operator in connection with the provision of hotel management services, including, but not limited to: establish and implement marketing, sales and reservations programs; recruit, relocate, supervise and train, and dismiss of Hotel personnel; supervise and maintain books and records for the Hotel; cause the Hotel to be maintained in good operating order and repair; negotiate, enter into and administer service contracts and licenses for Hotel operations; service and purchase all inventories and supplies; prepare and submit annual budget; administer rental program; perform all tasks as are customary in the performance of the hotel operator services at hotels of the standard of the operating standard.
2. Establishes rights and obligations in connection with the rental program.
3. Establishes that all components of the Building must be operated in connection with certain operating standards.
4. Sets forth operation standards and obligations in connection with the operation of the Hotel.
5. Establishes approval rights over the annual budget, and mechanisms in connection therewith.
6. Sets forth obligations to fund working capital requirements, and provide funds in the event that there are insufficient funds in the operating account to allow for uninterrupted an efficient operation of the Hotel.
7. Sets forth management fees which consist of (i) a base license fee which is (1) a certain percentage of the gross operating revenue generated by the Hotel Units ("**Base Fee Hotel**"), and (2) a certain percentage of gross operating revenue generated by the Hotel Amenities Unit ("**Base Fee Hotel Amenities Unit**"), and (ii) an incentive license fee ("**Incentive Fee**") which is (1) a certain percentage gross operating profit generated by the Hotel less insurance premiums, real property taxes and contributions to

7

      the capital reserve funds, and (2) a certain percentage of gross operating revenue generated by the Hotel Amenities Unit less insurance premiums, real property taxes and contributions to the capital reserve funds.

8. Establishes a flat minimum annual fee for Hotel Units that are not in the rental program ("**Non-Participating Units Minimum Fee**"), and a flat minimum annual fee for Hotel Units that are in the Rental Program ("**Participating Units Minimum Fee**").

  c. **Effect of First Amendment to Amended and Restated Hotel Management Agreement**

    i. General.
      1. Establishes the opening date of the Hotel as July 6, 2011.
      2. Sets forth completion dates for delivery of Beach Club.
      3. Requires Debtor to use best efforts to deliver the spa and casino as soon as practicable.

    ii. Economics.
      1. Reduces Base Fee Hotel by decreasing percentages for years 0-3, 4-7 and 8-25.
      2. Eliminates the Participating Units Minimum Fee.
      3. Reduces the Non-Participating Units Minimum Fee.
      4. Eliminates the requirement of Owner to pay the Incentive Fee until the start of the fourth year of operation of the Hotel; thereafter reduces the Incentive Fee.

**III.**   **FIRST AMENDMENT TO P.H. TOC MANAGEMENT AGREEMENT**

  a. **Parties:** Condominium Manager and Owners Meeting

  b. **Description of P.H. TOC Management Agreement:**

    i. General Description: Condominium Manager, as manager, and Owners Meeting, as owner, entered into that certain P.H. TOC Management Agreement dated April 13, 2011. Upon the effectiveness of the Plan and the satisfaction of certain conditions to effectiveness, the P.H. TOC Management Agreement is to be amended by the First Amendment thereto (described below).

    ii. Purpose:

      1. Sets forth obligations of Condominium Manager in connection with the provision of condominium management services, including, but not limited to: all services required to administer the affairs of the P.H. TOC, the Building, the Owners Meeting; prepare annual budgets; collect assessments and special charges from owners of Units; establish bank

8

accounts; prepare and maintain books and records; administer meetings of the board of directors, Owners Meeting and committees, and board of coordinators in connection with the P.H. TOC; obtain and maintain licenses and permits required to be obtained by Owners Meeting and Hotel Owner in connection with the operation and management of the P.H. TOC; and any and all other services reasonably required to fulfill the obligations under the P.H. TOC Management Agreement .
2. Sets forth management fees which consist of a flat management fee per annum, escalated annually by an inflation index ("**Condominium Management Fee**").

c. **Effect of Trump First Amendment to P.H. TOC Management**

   i. General.
      Establishes the opening date of the Hotel as July 6, 2011.

   ii. Economics.
       1. Eliminates the Condominium Management Fee.
       2. Limits the termination payment upon a termination of the P.H. TOC Management Agreement due to a default of the Owners Meeting.

IV. **FIRST AMENDMENT TO PRE-OPENING SERVICES AGREEMENT**

   a. **Parties:** Debtor, Hotel Asset Manager and Hotel Operator

   b. **Description of Pre-Opening Services Agreement:**

      i. General Description:
         Debtor, as promoter/developer, Hotel Asset Manager, as hotel asset manager, and Hotel Operator, as hotel operator, entered into that certain Pre-Opening Services Agreement dated April 13, 2011. Upon the effectiveness of the Plan and the satisfaction of certain conditions to effectiveness, the Pre-Opening Services Agreement is to be amended by the First Amendment thereto (described below).

      ii. Purpose:

          1. Sets forth obligations of Hotel Operator in connection with the provision of services in for the pre-opening of the Hotel; including, but not limited to: hiring and training employees; preparing pre-opening marketing plan; providing guidance and specifications for purchase of information technology, furniture, fixtures and equipment, operating supplies required for the opening and operation of the Hotel; and preparing pre-opening budget.
          2. Establishes payment requirements of Debtor in connection with funding working capital advances.

9

3. Establishes procedures for reimbursement of working capital advances made by Debtor.
4. Establishes requirements that in connection with all Units that have not been sold to third parties, Debtor must pay all building assessments, component assessments, and in the case of Hotel Units, will enter the Hotel Units into a Hotel Unit Maintenance Agreement, Rental Management Agreement and Beach Club Membership Agreement.
5. Sets forth a pre-opening services fee paid to Hotel Operator ("**Pre-Opening Services Fee**").

c. **Effect of First Amendment to Pre-Opening Services Agreement**

   i. General.
   Establishes the opening date of the Hotel as July 6, 2011.

   ii. Economics.
   Modifies the provisions for the reimbursement of working capital advances made previously by the Debtor such that the Debtor preserves its ability to be reimbursed from working capital reserve payments made in connection with Unit sales closings, once a certain threshold amount of such payments is reached.

V. **NON-DISTURBANCE AGREEMENT**

a. **Parties:** Debtor, Licensor, Condominium Manager, Hotel Operator, CSC Trust Company of Delaware, a Delaware corporation, solely in its capacity as Trustee (the "**Trustee**") under the Indenture, and Global Financial Funds Corp, a *sociedad anonima*, solely in its capacity Co-Trustee ("**Co-Trustee**")

b. **Description of Non-Disturbance Agreement:** Subject to the confirmation of the Plan, and as a condition to the effectiveness of each of the Trump Concessionary Amendments, the Trustee, Co-Trustee, Debtor and the Trump Parties shall enter into the Non-Disturbance Agreement pursuant to which the Trustee and Co-Trustee agree that (i) the pledge of the Debtor's equity as additional collateral for the secured Notes, and the exercise of that pledge, will not alter the obligations of the Debtor under the Trump Agreements and certain other hotel agreements, and (ii) in the event that the Trustee, Co-Trustee or their designee shall become the owner of the Units now constituting collateral securing the Notes, such Units will remain subject to management by the Hotel Operator pursuant to the terms of existing agreements with the Debtor, until such Units are resold.