Hearing Date: August 13, 2013 at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: July 26, 2013 at 4:00 p.m. (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
IN RE: : Chapter 11
:
NEWLAND INTERNATIONAL : Case No. 13-11396 (MG)
PROPERTIES, CORP., :
:
Debtor. :
:
------------------------------------------------------------x

**SUMMARY SHEET TO THE FIRST AND FINAL APPLICATION OF GAPSTONE LLC, AS FINANCIAL ADVISOR FOR THE DEBTOR, FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM APRIL 30, 2013 THROUGH MAY 30, 2013**

| | |
|---|---|
| Name of Applicant: | Gapstone LLC (including its partners and affiliates, "Gapstone") |
| Authorized to Provide Professional Services to: | Debtor and Debtor in Possession |
| Date of Retention: | *Nunc pro tunc* to April 30, 2013 pursuant to Order [Dkt. No. 65] entered on May 17, 2013 |
| Compensation Period: | April 30, 2013 to May 30, 2013 |
| Compensation Requested: | $4,000,000.00 |
| Total Hours Billed | 623.0 |
| Amount of Expenses Requested: | $1,346.53 |
| Total Amount Requested: | $4,001,346.53 |
| Less: Amounts Paid to Date[1]: | $0.00 |
| This is a(n): | _____ monthly   _____ interim   __X__ final application |
| Prior Applications Filed: | None. |

---

[1] Pursuant to the Engagement Agreement (defined herein), Gapstone holds a fee retainer in the amount of $110,000 and an expense retainer in the amount of $9,549.35. Upon approval of the Court, Gapstone will apply the fee retainer to the $4,000,000 of fees it incurred and the expense retainer to the $1,346.53 in disbursements for which Gapstone seeks reimbursement. Any remaining balance of the expense retainer at the conclusion of Gapstone's engagement will be refunded to the Debtor.

Hearing Date: August 13, 2013 at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: July 26, 2013 at 4:00 p.m. (Prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
IN RE:                                : Chapter 11
                                      :
NEWLAND INTERNATIONAL                 : Case No. 13-11396 (MG)
PROPERTIES, CORP.,                    :
                                      :
            Debtor.                   :
                                      :
---------------------------------------------------------------x

**FIRST AND FINAL APPLICATION OF GAPSTONE LLC, AS**
**FINANCIAL ADVISOR FOR THE DEBTOR, FOR ALLOWANCE**
**OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM APRIL 30, 2013 THROUGH MAY 30, 2013**

Gapstone LLC (including its partners and affiliates, "Gapstone"), financial advisor for Newland International Properties, Corp., as debtor and debtor in possession in this Chapter 11 case (the "Debtor"), hereby submits this first and final application (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), *General Order M-447, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* (the "Local Guidelines"), the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective January 30, 1996 (the "UST Guidelines"), and the *Order Authorizing the Employment and Retention of Gapstone LLC as Financial Advisor to the Debtor in Possession Nunc Pro Tunc to the Petition Date* (the

EAST\56728714.2

"Retention Order"[1] and together with the Local Guidelines and the UST Guidelines, the "Guidelines") for the allowance of compensation for professional services rendered by Gapstone for the period commencing April 30, 2013 through and including May 30, 2013 (the "Compensation Period"), and for reimbursement of Gapstone's actual and necessary expenses incurred during the Compensation Period as set forth in its engagement agreement (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit B**. In support hereof, Gapstone respectfully represents as follows:

### SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

Gapstone seeks allowance of final compensation for professional services rendered to the Debtor during the Compensation Period in the aggregate amount of $4,000,000.00 and for reimbursement of actual and necessary expenses incurred in connection with the rendition of such services in the aggregate amount of $1,346.53. During the Compensation Period, Gapstone expended a total of approximately 623 hours for which compensation is requested. Pursuant to the terms of the Engagement Agreement and subject to Court approval, the Debtor and Gapstone agreed that, subject to Court approval, Gapstone's fees would be equal to the lesser of (a) 2.0% of the total face value of Client Debt (as defined in the Engagement Agreement) that is subject to restructuring, including via acquisition, exchange, amendment, rescheduling, or cancellation and re-issuance, and (b) $4,000,000. Because the amount equal to 2.0% of the total face value of Client Debt that is subject to restructuring is greater than $4,000,000, Gapstone seeks compensation in the amount of $4,000,000.

There is no agreement or understanding between Gapstone and any other person, other than members, associates and employees of Gapstone, for the sharing of compensation received

---

[1] A copy of the Retention Order is annexed hereto as **Exhibit C**.

or to be received for services rendered in connection with this Chapter 11 case.

Gapstone, in its normal course of business, invoices its clients a flat monthly fee and/or a fixed transaction fee and does not charge by the hour.  Thus, Gapstone does not ordinarily keep time records.  For the benefit of the Court and in accordance with the Guidelines, however, Gapstone recorded its time in half-hour increments and has provided summaries of the time spent by its professionals during the Compensation Period, attached hereto as **Exhibit D**.  Further, a summary of the out-of-pocket expenses incurred by Gapstone in the Compensation Period is attached hereto as **Exhibit E**, specifying the categories of expenses for which Gapstone is seeking reimbursement and the total amount for each such expense.

Prior to the commencement of the Chapter 11 case, Gapstone was paid $110,000 (the "Fee Retainer"), which it agreed to treat as a retainer and to apply to the fees earned in connection with the Engagement Agreement, subject to any required Court approval.  As of the Petition Date (as defined herein), the balance of the Fee Retainer was $110,000.  In addition, prior to the commencement of this Chapter 11 case, the Debtor advanced a retainer to Gapstone for expenses in the amount of $15,000 (the "Expense Retainer") to be applied against pre-petition and post-petition expenses incurred by Gapstone.  As of the Petition Date, the balance of the Expense Retainer was $9,549.35.

## BACKGROUND

1.  On April 30, 2013 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  No request has been made for the appointment of a trustee or examiner in this

Chapter 11 case. No official committee has been appointed by the Office of the United States Trustee.

3. On May 17, 2013, the Court entered the Retention Order, approving Gapstone's employment and retention as financial advisor to the Debtor, *nunc pro tunc* to the Petition Date. Pursuant to the Retention Order, the Debtor retained Gapstone as its financial advisor in accordance with the *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Gapstone LLC as financial advisor to the Debtor in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 22] (the "Gapstone Retention Application") and the terms and conditions set forth in the Engagement Agreement.

4. On April 30, 2013 the Debtor filed its *Prepackaged Plan of Reorganization for the Debtor under Chapter 11 of the Bankruptcy Code* [Docket No. 11] (the "Plan") and *Disclosure Statement for the Prepackaged Plan of Reorganization for the Debtor under Chapter 11 of the Bankruptcy Code* [Docket No. 12] (the "Disclosure Statement").

5. On May 30, 2013, the Court entered an order approving the Disclosure Statement and confirming the Plan [Docket No. 125] (the "Confirmation Order").

6. On July 3, 2013 the Plan became effective as confirmed by this Court in the Confirmation Order.

7. Founded in 2008 and headquartered at 1140 Avenue of the Americas, New York, New York, Gapstone provides a broad range of corporate advisory services to clients, including, without limitation, (a) general advisory services, (b) corporate and project finance restructuring, (c) analysis and restructuring of complex derivatives exposure, (d) asset and liability management, and (e) cross-border and structured finance solutions.

8. Gapstone has, for approximately two years, served in a financial advisory role to

the Debtor, pursuant to the Engagement Agreement. In that role, Gapstone has been closely involved in the operational, contractual, and financial developments of the Debtor and is familiar with virtually all aspects of the Debtor's business and legal affairs and its restructuring efforts. Since being retained, Gapstone has provided the Debtor with a wide array of financial services in connection with its business affairs, operations, turn-around strategy and implementation, and its restructuring and reorganization efforts, including (a) Chapter 11 planning and preparation, including negotiation and preparation of a plan support agreement and the terms, limitations and conditions of the Debtor's proposed use of cash collateral and (b) overseeing the negotiation, drafting of and solicitation of the Plan and Disclosure Statement, including the preparation of the liquidation analysis and projections upon which the Debtor's feasibility analysis is premised. After assisting the Debtor in laying the ground work for this Chapter 11 case, Gapstone was retained as financial advisor to the Debtor to continue to perform the services set forth in the Engagement Agreement. The Debtor retained Gapstone due to the relevancy of Gapstone's experience and expertise for the Debtor's structure finance, investment banking, and financial advisory needs, particularly in the restructuring area, in order to help ensure a successful outcome in the Chapter 11 case.

9.    In consideration for the services that Gapstone agreed to perform and subject to Court approval, the Debtor agreed to pay a success fee to Gapstone equal to the lesser of (a) 2.0% of the total face value of Client Debt (as defined in the Engagement Agreement) that is subject to restructuring, including via acquisition, exchange, amendment, rescheduling, or cancellation and re-issuance, and (b) $4,000,000. <u>See</u> Exhibit B. The Court approved this fee structure in the Retention Order. Because the amount equal to 2.0% of the total face value of Client Debt that is subject to restructuring is greater than $4,000,000, Gapstone seeks

compensation in the amount of $4,000,000 for its services rendered pursuant to the terms of the Engagement Agreement.

10. All services for which Gapstone requests compensation in this Application were performed by Gapstone for or on behalf of the Debtor.

11. This is the first and final fee application for Gapstone.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the Application under 28 U.S.C. § 1334. Venue of this Chapter 11 case and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

13. The statutory predicates for the relief requested in the Application are Bankruptcy Code sections 105(a), 327 and 328, Rule 2016 of the Bankruptcy Rules and Local Rule 2016-1. A certification of compliance is attached hereto as **Exhibit A**.

## SUMMARY OF SERVICES RENDERED IN THE COMPENSATION PERIOD

14. Subject to the Guidelines and consistent with the Engagement Agreement, Gapstone provided a broad range of necessary financial advisory services to the Debtor throughout the course of this Chapter 11 case. In that regard, Gapstone was retained to provide the Debtor with the following services (collectively, the "Services"), among others:[2]

(a) Conduct a financial evaluation of Trump Ocean Club Hotel and Tower Panama ("TOC") related indebtedness and other payables in order to determine an optimal strategy for certain restructuring transactions designed to provide financial flexibility and enhance the equity value of Debtor;

---

[2] Terms used in this paragraph 14 that are not defined herein have the meaning ascribed to them in the Engagement Agreement.

  (b)  Perform in-depth financial analysis of Debtor's assets and TOC inventory, conduct unit buyer default analysis, construct cash flow projections, and create revenue collection projections;

  (c)  Advise management with respect to alternatives and optimal courses of action, including certain restructuring transactions;

  (d)  Assist Debtor in obtaining financing for unit buyers on acceptable terms for such unit buyers;

  (e)  Determine strategies for dealing with defaulted unit buyers, including vendor financing and rental programs;

  (f)  Assist with strategies, including certain restructuring transactions, designed to maintain compliance with the required collateralization ratio and other material covenants of Debtor's indebtedness, including notes, as required to avoid a default;

  (g)  Work with Debtor to prepare both pre-marketing and final presentations for TOC creditors in order to explain and advocate Debtor's chosen restructuring approach;

  (h)  Structure and negotiate, in consultation with Debtor, all material terms of such certain restructuring transactions and the structure and composition of consideration provided by Debtor, including but not limited to asset swaps, debtor-for-equity swaps, or the establishment of a liquidating trust, and in compliance with all covenants in the TOC notes documentation; and

  (i)  Oversee any agent selected by the Debtor and approved by Gapstone and the Court to act as ballot solicitation agent, dealer/manager and/or information agent.

15.  Specifically, over the course of this Chapter 11 case, the Debtor relied heavily on the expertise and experience of Gapstone's professionals in dealing with matters related to its business affairs, operations, turn-around strategy and restructuring plan. Indeed, from the conclusion of the Compensation Period to the date of this Application, Gapstone has performed over 600 additional hours in connection with its retention as financial advisor to the Debtor. Notwithstanding the additional services that Gapstone has provided, and anticipates continuing to provide to the Debtor, Gapstone will not seek any fees for services performed in connection with the Engagement Agreement beyond those sought in this Application.

16.  Details and summaries of the time spent by its professionals during the

Compensation Period are attached hereto as Exhibit D and based on general project codes as further described below:

**CEF: Fee Application/Engagement**
- Prepare requisite documentation and supporting information and exhibits for first and final fee application
- Prepare requisite documentation and historical payments and incurred expenses for expense reimbursement

**CET: Court Testimony/Depositions, and Proceedings**
- Attend and assist Debtor and its counsel during court hearings on first day relief
- Attend and assist Debtor and its counsel during court hearings on cash collateral motions and other relief
- Assist Debtor and its counsel in discussions with U.S. Trustee for placing Trump documents under seal
- Attend and assist during court hearings on Plan confirmation
- Provided testimony regarding the feasibility of the Plan

**CEP: Preparation and/or Review of Court Filings**
- Assist Debtor with the review and drafting of certain sections of the Debtor's court filings relating to the Plan, including where applicable, preparing accompanying declarations as well as providing testimony as requested
- Assist Debtor with the preparation and review of creditor lists
- Assist Debtor with the preparation and review of executory contracts list
- Assist Debtor with the preparation and review of executory contract cure notices
- Assist Debtor with the preparation and review of Trump documentation summary for U.S. Trustee and Court
- Prepare De Angelis Declaration in support of confirmation of the Plan
- Prepare court testimony regarding feasibility, liquidation analysis including stress testing of assumptions and projections.
- Assist Debtor with the review and preparations for Plan objections
- Prepare cash flow projections for feasibility analysis of Plan
- Prepare stress analysis for Plan feasibility
- Prepare Liquidation Analysis

**RAF: Research and Analysis – Financing**
- Prepare and review calculations for note issuance including, minimum scheduled amortizations, interest capitalization, allocations of interest capitalization across maturity schedule, and coupon payments
- Prepare and discuss financial information for ratings agency
- Analyze notes structure to permit financing of Beach Club
- Assist in the development of the Debtor's financial projections and financial model to be shared with various constituents, including the advisors to the general unsecured creditors' committee

- Assist in the development of financial data and presentations to the Debtor's board of directors, management, various creditors and other third parties and their representatives including the Steering Group, the Trustee, the Co-Trustee, the Trump entities, Sun International, Cervera Real Estate, GRISA, and Marvin Traub & Associates

**RAC: Research and Analysis - Projections and Feasibility**
- Assist Debtor to evaluate its business, operations and financial projections
- Assist in the development and evaluation of the Debtor's revenue lines and long-term business plan, including as it pertains to the Debtor's strategic review process
- Assist with preparation and review of cash flow modeling results of Debtor
- Review Debtor's operating reports
- Review external market data
- Discuss with management, shareholders, vendors, sales staff, construction management, the Trump entities, creditors, Panamanian real estate and tax attorneys, Cervera Real Estate, the Trump entities, Sun International for development of model parameters and drivers various issues regarding projections and feasibility
- Extensive operating and financial modeling with the ability to perform sensitivity analyses on the Debtor's operating assumptions and revenue and expense lines included in the business plan
- Research Panamanian markets to establish norms and guidelines for the liquidation analysis
- Discuss cash flow modeling results of financial advisors to the Steering Group
- Analyze debt capacity of the Debtor and estimated recoveries to creditors of the Debtor pursuant to the Plan and in a Chapter 7 liquidation, including secured creditors, unsecured creditors, and the Trump entities

**PUB: Public Relations and Corporate Communications**
- Assist Debtor with drafting of Press Releases
- Review and analyze news headlines and blogosphere content
- Review and discuss marketing and advertising plans and information delivery modes
- Assist Debtor with preparation for discussions with Panamanian press
- Respond to general inquiries sent to Debtor, including from residents and prospective purchasers of real estate
- Respond to inquiries and information requests from research analysts

**NFN: Newland Financing - Restructured Notes**
- Provide strategic advice and analysis with regard to the overall restructuring process and such other advice as requested with the analysis, negotiation, and execution of the restructuring
- Assist with due diligence for the financial advisors to the Steering Group and other interested parties, including arranging in-person meetings and conference calls with the Debtor's representatives, conducting meetings and assisting in the preparation and delivery of materials
- Assist in the review and drafting of U.S. and Panama transaction documentation
- Assist in the implementation and execution of restructuring transaction, including coordination of mechanics of distribution, DTC eligibility, obtaining CUSIPS,

establishing minimum denominations, calculations of debt exchange rate and allocation of old notes to new notes
- Coordinate mortgage amendment and registration requirements
- Participate in the selection and negotiations of terms for the replacement Trustee and Co-Trustee
- Participate in the selection and negotiations with rating agency and coordinated all activities with same for procuring a credit rating for the New Notes
- Assist Debtor and its counsel with scheduling and coordination of execution and ancillary closing checklist items

**NFB: Newland Financing - Bulk Sale Transactions**
- Assist Debtor with negotiation and execution of extensions with existing counterpart
- Assist Debtor with analysis of substitutable units with existing counterpart
- Prepare proposals for the Bulk Units Financing and sourced interest among potential counterparties.
- Assist Debtor in analysis for bulk units financing transaction, including summarizing the deal terms, analyzing the cash and non-cash considerations being offered to the Debtor, and incorporating the terms into its financial model.
- Assist in arranging the bulk units financing transaction financing including the selection of suitable counterparts, the negotiation of all material terms and definitive documentation, conducting due diligence, and preparing transaction documentation
- Analyze and select bulk units portfolio and substitution rights eligibility criteria

**NOB: Cash Collateral & Expense Budgeting**
- Assist Debtor in determining its short-term liquidity and monthly working capital budgeting, including advising with respect to the timing, need and amount of any payment approved by the Steering Committee and in compliance with the cash collateral budget
- Review accounts payables activities
- Review line-item expenses with Debtor to ensure compliance with cash collateral report
- Assist Debtor with preparation of cash collateral budget and variance reports
- Assist Debtor with monthly working capital budgeting allocations under new notes structure
- Prepare amended budget for cash collateral waiver


**NOC: Newland Operations: Corporate Planning & Monitoring**
- Assist Debtor with business planning and prospects for sales on an ongoing basis including reviewing potential strategic decisions such as product mix, pricing, sales incentives, rental programs, marketing and loyalty programs, and new revenue lines.
- Assist Debtor with analysis and strategy for tax appraisal increases
- Assist Debtor with review of tax payments
- Assist Debtor with review of sales activities and broker commissions
- Assist Debtor in developing plan and parameters for furnished and unfurnished rental program
- Assist Debtor in developing plan and parameters for furniture package sales incentives

- Discuss with various potential strategic investors and their representatives offering restructuring financing, equity investments and bulk purchases with the Debtor and establishing the terms and feasibility of such offers and the suitability and financial viability of such parties.
- Assist the Debtor's management with issues related to retention of certain key employees and sales staff.
- Assist the Debtor in various negotiations with certain purchasers seeking to rescind or restructure real estate purchases with the Debtor (such purchasers included groups formed for the purpose of collective negotiations)

**BCC: Beach Club and Casino Projects – Financing/ Shareholder Arrangements/ Operating Plans**
- Assist CCSA parties and Debtor with analysis of financial needs of beach club
- Review status of beach club construction progress
- Assist Debtor and CCSA parties with analysis and inquires related to BC senior loan terms and conditions in the new notes transaction documentation
- Assist CCSA parties with negotiations among themselves for the capital and corporate organization structure of beach club
- Assist CCSA parties with negotiation and drafting of shareholder's agreement
- Assist CCSA parties with review of operating models of beach club, including with prospective operators
- Assist Debtor with inquiries from Sun International related to the Debtor's restructuring process and impact on the framework agreement for the casino transaction.

**TRM: Trump & MTA Negotiation and Execution**
- Assist Debtor and its counsel with negotiation and drafting of transaction documentation with the Trump entities including license agreement, hotel management agreement, asset management agreement, pre-opening services agreement, condominium association management agreement and the non-disturbance agreement
- Assist Debtor with calculations of payments and recoveries to Trump entities under the amended license agreement.
- Assist Debtor and its counsel with negotiation and drafting of beach club access agreement
- Assist Debtor with negotiations of payment plan for past-due amounts under license agreement and terms for working capital relief post-restructuring.


**GUP: Generally Interfacing and Updating Debtor, Professionals, and Parties-in-Interest**
- Generally assist Debtor with preparations for and/or attended meetings and conference calls with the Debtor's management team and shareholders regarding updates on matters, new developments, and potential issues relating to the Debtor's operations and its restructuring
- Information updates and requests for parties in interest
- Information updates and requests for Debtor's counsel
- Information updates and requests for Debtor's sales advisors
- Information updates and requests for Sun International, potential bulk sales counterparts

- Information updates and requests for members of Steering Group and its financial and legal advisers

### ACTUAL AND NECESSARY DISBURSEMENTS OF GAPSTONE

17. As set forth on **Exhibit E** annexed hereto, Gapstone has incurred a total amount of $1,346.53 as actual and necessary expenses in providing professional services during the Compensation Period. Gapstone has maintained detailed records of actual and necessary expenses incurred during the Compensation Period. With respect to expenses, it should be noted that Gapstone has absorbed certain expenses customarily charged by other professionals in bankruptcy cases. For example, with the exception of a certain conference-call compatible telephone line set up and maintained in connection with this Chapter 11 case, Gapstone does not allocate office telephonic charges by client and thus these costs are absorbed by Gapstone in its overhead and not charged to the Debtor's estate. Gapstone respectfully submits that the expenses for which it seeks reimbursement during the Compensation Period are necessary and reasonable both in scope and amount.

18. Prior to the Petition Date, the Debtor paid Gapstone the Expense Retainer with the understanding that this amount would be applied against any pre-petition and post-petition expenses incurred. Gapstone has applied $6,051.06 for expenses incurred pre-petition through the Petition Date, leaving $9,549.35 to be applied against post-petition expenses (the "Unapplied Expense Retainer"). During the Compensation period, which occurred post-petition and prior to entry of the Confirmation Order, Gapstone incurred actual and necessary expenses in connection with this Chapter 11 case in the amount of $1,346.53. Any remaining balance of the Expense Retainer at the conclusion of Gapstone's engagement will be refunded to the Debtor.

## BASIS FOR RELIEF REQUESTED

19. By this Application, Gapstone seeks entry of an order granting allowance of compensation for professional services rendered and for reimbursement of expenses incurred by Gapstone as financial advisor to the Debtor during the Compensation Period.

20. Section 328(a) of the Bankruptcy Code allows a professional to obtain prior court approval of the terms of its retention. See 11 U.S.C. § 328(a). Under that provision, a professional may avoid uncertainty by obtaining (a) advance court approval of compensation terms agreed to with the estate and (b) a court finding that such terms are reasonable in advance of the professional providing related services. See In re Nat'l Gypsum Co., 123 F.3d 861, 862-863 (5th Cir. 1997). Section 328(a) of the Bankruptcy Code explicitly contemplates court approval of contingent fees, such as success fees and transaction fees. See 11 U.S.C. § 328(a) ("The trustee . . . with the court's approval, may employ a professional person . . . on any reasonable terms and conditions of employment, including . . . on a contingent fee basis"). In Chapter 11 cases, courts typically approve terms and conditions of compensation arrangements of financial advisors like Gapstone under section 328(a) of the Bankruptcy Code.

21. In its application for the retention of Gapstone, the Debtor acknowledged that the fee and expense structure agreed by Gapstone is market-based and fair and reasonable. In determining the level of compensation to be paid to Gapstone and its reasonableness, the Debtor compared Gapstone's original fee proposal to other proposals received by the Debtor in the financial advisor selection process and found Gapstone's proposed fees to be reasonable and within the range of other comparable engagements. Moreover, the fee and expense structure, including the specific U.S. dollar amount of the success fee, was disclosed to all impaired creditors and other parties in interest via the Plan Support Agreement, the Plan and Disclosure

Statement for which 100% of the voted ballots were in favor, the Cash Collateral budget, and the declarations in support of confirmation of the Plan.

22. Once a court has approved the terms and conditions of a compensation arrangement under section 328(a) of the Bankruptcy Code, "the court may allow compensation under different terms from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Thus, unless the initial approved compensation terms are found to be "improvident" under the aforementioned test, a court cannot change such terms or conditions of employment that have already been approved under section 328(a) of the Bankruptcy Code. See In re Fed. Mogul-Global Inc., 348 F.3d 390, 397 (3d Cir. 2003); In re B.U.M. Int'l, Inc., 229 F.3d 824, 829 (9th Cir. 2000) ("A bankruptcy court may not conduct an inquiry into the reasonableness of fees and their benefit to the estate if the court has already approved the professional's employment under 11 U.S.C. § 328").

23. It is respectfully submitted that the amount requested by Gapstone is fair and reasonable. Specifically, due to the scope and complexity of matters that are the subject of Gapstone's engagement, substantial time and effort has been required. The Gapstone professionals devoted themselves for significant periods of time to the exclusion of other clients and affairs to consultation of the Debtor leading up to and during this Chapter 11 case. Gapstone has addressed many complex economic and financial issues arising from and impacting strategies for the Debtor's operations during this Chapter 11 case. Further, Gapstone provided such services with the understanding that its compensation would be on a fixed, success fee that was established to reflect the scope of the assignment and the potential for failure resulting from

factors outside of Gapstone's control.

24.     Further, to assist the Debtor properly, Gapstone has drawn on the judgment, experience, substantive knowledge, and discipline of its professionals, who specialize in, among other things, sophisticated economic and valuation analyses relevant to financial restructurings and reorganizations.  Given the broad scope of the many complex issues raised during the Chapter 11 case, a high degree of skill and dedication were required and was provided to the Debtor.

25.     Due to the foregoing, the transaction fee charged by Gapstone for the efforts of its professionals are within the range of the fees usually charged by national financial advisory firms of similar skill and reputation.  Upon information and belief, the fees charged by Gapstone are similar in amount to those charged by financial advisory firms in bankruptcy cases of comparable size, complexity, and importance.  Indeed, the fee expectations of Gapstone upon accepting this case was that Gapstone would receive compensation for professional services rendered pursuant to the terms of the Engagement Agreement, subject to Court approval.  Such approval was granted when the Court entered the Retention Order.

26.     No prior application for the relief requested herein has been made to this or any other court.

## NOTICE

27.     Pursuant to Bankruptcy Rule 2002, Gapstone has provided notice of the Application to the following parties: (a) the Debtor; (b) counsel to the Steering Group; (c) counsel to the Indenture Trustee; (d) the Office of the U.S. Trustee; (e) the Securities and Exchange Commission, New York Regional Office; and (f) all other parties entitled to notice of the Application.  In light of the nature of the relief requested, Gapstone respectfully submits that

no further notice is necessary.

## CONCLUSION

**WHEREFORE** Gapstone respectfully requests (a) a final compensation for professional services rendered during the Compensation Period in the amount of $4,000,000 and reimbursement for actual and necessary expenses Gapstone incurred during the Compensation Period in the amount of $1,346.53; (b) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Gapstone's right to seek reimbursement for additional expenses incurred during the Compensation Period that were not processed at the time of this Application; and (c) such other and further relief as is just and proper.

| | |
|---|---:|
| Total Fees Requested | $4,000,000 |
| Total Expenses Requested | 1,346.53 |
| **Total Amount Requested** | **$4,001,346.53** |
| Less: Amounts Paid to Date[3] | ($0.00) |
| **Net Amount of Compensation Requested** | **$4,001,346.53** |

Dated: 7/12/2013
New York, New York

_____
Alfredo de Angelis

*Financial Advisor for the Debtor and Debtor in Possession*

---

[3] Pursuant to the Engagement Agreement (defined herein), Gapstone holds a fee retainer in the amount of $110,000 and an expense retainer in the amount of $9,549.35. Upon approval of the Court, Gapstone will apply the fee retainer to the $4,000,000 of fees it incurred and the expense retainer to the $1,346.53 in disbursements for which Gapstone seeks reimbursement. Any remaining balance of the expense retainer at the conclusion of Gapstone's engagement will be refunded to the Debtor.